1  ZIMMERMAN REED LLP
   Hart L. Robinovitch (Admitted *Pro Hac Vice*)
2    E-mail: hart.robinovitch@zimmreed.com
   14646 N. Kierland Blvd., Suite 145
3  Scottsdale, Arizona 85254
   (480) 348-6400 Telephone
4  (480) 348-6415 Facsimile

5  LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.
   David A. Markman (Nevada Bar No. 12440)
6    E-mail: dmarkman@lipsonneilson.com
   9900 Covington Cross Dr., Suite 120
7  Las Vegas, Nevada 89144
   (702) 382-1500 Telephone
8  (702) 382-1512 Facsimile

9  *Attorneys for Plaintiffs*
   *(Additional Counsel listed below)*
10

11              **UNITED STATES DISTRICT COURT**

12                 **DISTRICT OF NEVADA**

13
   CAMERON PARK, JOSHUA RILEY,          | Case No. 2:17-cv-02282
14 MICHAEL ADAMI, MEGAN DUNCAN,
   BENITO ALICEA, JR., PHILLIP GARCIA,  | *Assigned to the Honorable Andrew P.*
15 HASAN DAAS, BRAD GRIER, WESLEY       | *Gordon*
   INMAN, MATT LeBOEUF, LLOYD
16 TRUSHEL, MARK WHITE, and             | **MOTION FOR PRELIMINARY**
   DONGSHENG LIU, on Behalf of Themselves | **APPROVAL OF PROPOSED CLASS**
17 and All Others Similarly Situated,   | **ACTION SETTLEMENT;**
                                        | **CONDITIONAL CERTIFICATION OF**
18              Plaintiffs,             | **SETTLEMENT CLASS; APPROVAL OF**
                                        | **CLASS NOTICE; AND APPOINTMENT**
19        v.                            | **OF CLASS COUNSEL;**
                                        | **MEMORANDUM OF POINTS AND**
20 ZUFFA, LLC, a Nevada Limited         | **AUTHORITIES IN SUPPORT**
   Liability Company (d/b/a "Ultimate   | **THEREOF**
21 Fighting Championship" and "UFC");
   and NEULION, INC., a Delaware        | Date:
22 Corporation,                         | Time:
                                        | Courtroom:
23              Defendants.
                                        | Date Action Filed: Aug. 29, 2017
24

25

26

27

28

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.   INTRODUCTION ....................................................................................... 1

II.  RELEVANT BACKGROUND REGARDING THE CLASS DISPUTE ................... 1

   A.   The Parties ......................................................................................... 1

   B.   The Fight ............................................................................................ 2

   C.   The Problem ....................................................................................... 3

   D.   The Litigation ..................................................................................... 4

   E.   Discovery and Mediation ................................................................... 5

   F.   The Settlement ................................................................................... 5

III. THE PROPOSED SETTLEMENT .................................................................. 6

   A.   Certification of a Settlement Class .................................................... 7

   B.   Benefits of the Monetary Relief Settlement ...................................... 7

      1.   Refund for purchase of streaming access available to
      Settlement Class members. ............................................................. 7

      2.   Reimbursement for out of-pocket expenses available to Settlement Class
      members. ........................................................................................ 8

   C.   Claims Procedure .............................................................................. 8

   D.   Release of Claims ............................................................................. 9

   E.   Opt-Out Procedure and Objections ................................................... 9

   F.   Claims Administration ..................................................................... 10

   G.   Class Representative Service Awards ............................................... 10

IV. The Court Should Grant Preliminary Approval of the Settlement ............ 11

   A.   Settlement and Class Action Approval Process ................................ 11

      1.   Policy encourages settlement ...................................................... 11

2.  Three-step procedure for approval of class action settlements. ......................... 12

3.  Standard for preliminary approval. ...................................................... 13

B.  The Criteria for Settlement Approval Are Satisfied. ............................................. 14

1.  The settlement is the product of serious, informed, and arm's-length
negotiations after the parties conducted extensive investigation and analysis. 14

2.  The settlement provides substantial relief for class members. ........................ 14

3.  The recommendations of experienced counsel favor approval of the
settlement. ...................................................................................... 15

4.  The named Plaintiffs support the settlement. .................................................... 16

V.  Certification of the settlement class is appropriate ...................................................... 16

A.  Plaintiffs' Claims Satisfy the Threshold Requirements for Class Certification. .... 17
1.  The proposed Class is ascertainable. ............................................................. 17

2.  The Class is so numerous that joinder is impracticable. ................................. 18

3.  There are questions of law or fact common to the claims ............................... 18

4.  The claims of the named Plaintiffs are typical of the Class. ............................ 19

5.  The Settling Plaintiffs and Settling Plaintiffs' Counsel adequately represent
the Class and should be appointed representatives of the Settlement Class. ..... 20

B.  Plaintiffs' Monetary Relief Claims Satisfy the Requirements for Class Certification
Under Rule 23(b)(3). ............................................................................................ 21

1.  The predominance requirement is satisfied. ................................................... 21

2.  A class action is a superior method of resolving this dispute ........................... 22

VI. THE COURT SHOULD APPROVE THE NOTICE PLAN AND SCHEDULE A
FAIRNESS HEARING ...................................................................................... 23

A.  The Court Should Order Notice Be Provided to the Class. .................................... 23

B.  The Court Should Set Settlement Deadlines and Schedule a Fairness Hearing. .... 24

C.  Scheduling a Final Approval Hearing is Appropriate ............................................ 24

VII.  CONCLUSION .................................................................................................... 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union, LLC,*
    240 F.R.D. 564 (C.D. Cal. 2007)............................................................................. 16, 18

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................................... 17, 21

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ..................................................................................... 17

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979) ............................................................................. 15

*Briseno v. ConAgra Foods, Inc.,*
    944 F.3d 1121 (9th Cir. 2017) ................................................................................... 17

*Cavin v. Home Loan Ctr., Inc.,*
    236 F.R.D. 387 (N.D. Ill. 2006) ................................................................................. 17

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir.2004) ...................................................................................... 14

*Class Pls. v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) .............................................................................. 12, 13

*Costelo v. Chertoff,*
    258 F.R.D. 600 (C.D. Cal. 2009).......................................................................... 18, 20

*Daas v. NeuLion, Inc.,*
    No. 1:17-cv-06944 (S.D.N.Y. Sept. 12, 2017) ............................................................... 4

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980) ............................................................................. 15, 20

*Ferrandini v. Zuffa, LLC,*
    No. 2:17-cv-06781 (C.D. Cal. Sept. 14, 2017)............................................................... 4

*Foster v. Oakland,*
    No. C-05-3110 MHP, 2007 WL 219796 (N.D. Cal. Jan. 29, 2007)......................................... 17

*Gamble v. Boyd Gaming Corp.,*
    No. 2:13-cv-01009-JCM-PAL, 2016 WL 3693743 (D. Nev. July 11, 2016)............................. 14

*Garcia v. Showtime Networks, Inc.*,
  No. 3:17-cv-01803 (S.D. Cal. Sept. 6, 2017)................................................................... 4

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................ 13, 16, 18, 20, 21, 22

*Harris v. U.S. Physical Therapy, Inc.*,
  No. 2:10-cv-01508-JCM-VCF, 2012 WL 3277278 (D. Nev. July 18, 2012) .......................... 15

*Hernandez v. Alexander*,
  152 F.R.D. 192 (D. Nev. 1993) ............................................................................ 18

*Hester v. Vision Airlines, Inc.*,
  No. 2:09-cv-00117, 2009 WL 4893185 (D. Nev. Dec. 16, 2009)............................................ 21

*In re Hyundai and Kia Fuel Economy Litig.*,
  No. 15-56014, 2018 WL 505343 (9th Cir. Jan. 23, 2018)...................................................... 19

*In re Mego Financial Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................................... 11

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995)........................................................................... 12

*In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
  No. 8:10ML02151, 2012 WL 7802852 (C.D. Cal. Dec. 28, 2012)............................................ 17

*In re Toyota  Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
  No. 8:10ML02151, 2013 WL 3224585 (C.D. Cal. June 17, 2013)............................................ 17

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
  No. 2:06-cv-00225-PMP-PAL, 2008 WL 3179315 (D. Nev. June 20, 2008)............................ 17

*In re Wells Fargo Home Mortg.*,
  571 F.3d 953 (9th Cir. 2009) ............................................................................... 22

*Kristensen v. Credit Payment Servs.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014)....................................................................... 17

*Linney v. Cellular Alaska P'ship*,
  No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. 1997)...................................................... 15

*Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ............................................................................. 21

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
  671 F. Supp. 819 (D. Mass. 1987)......................................................................... 15

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................ 11, 15

*Palacios v. Penny Newman Grain, Inc.*,
    No. 1:14-cv-01804-KJM, 2015 WL 4078135 (E.D. Cal. July 6, 2015) .................................. 13

*Park v. Zuffa, LLC*,
    No. 2:17-cv-02282 (D. Nev. Aug. 29, 2017) ...................................................................... 4

*Radcliffe v. Experian Info. Sol. Inc.*,
    715 F.3d 1157 (9th Cir. 2013) ............................................................................ 16

*Riley v. Zuffa, LLC*,
    No. 2:17-cv-02308 (D. Nev. Sept. 1, 2017) ...................................................................... 4

*Santoro v. Aargon Agency, Inc.*,
    252 F.R.D. 675 (D. Nev. 2008) ............................................................................ 20

*Schoenbaum v. E.I. DuPont De Nemours & Co.*,
    No. 4:05CV01108 ERW, 2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) ................................. 13

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
    157 F. Supp. 2d 561 (E.D. Pa. 2001) ........................................................................ 13

*Staton v. Boeing*,
    237 F.3d 938 (9th Cir. 2003) ......................................................................... 11, 20

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814 (MP), 2004 WL 1087261(S.D.N.Y. May 14, 2004) ................................. 15

*Utility Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ............................................................................ 11

*Vance v. Showtime Networks, Inc.*,
    No. 1:17-cv-06894 (S.D.N.Y. Sept. 11, 2017) .................................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541, 2551 (2011) ............................................................................ 18

*White v. Nat'l Football League*,
    836 F. Supp. 1458 (D. Minn. 1993 ..................................................................... 13, 17

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ............................................................................ 13

*Wolin v. Jaguar Land Rover N. Am. LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................................ 22

1

### Other Authorities

2

4 NEWBERG ON CLASS ACTIONS
   §11.41 (4th ed. 2002) ("NEWBERG") ................................................................. 12, 13, 16

3

5 James Wm. Moore, MOORE'S FED. PRAC.
   § 23.83(1)(3d. ed. 2002) ......................................................................... 13

4

5

MANUAL FOR COMPLEX LITIGATION
   §21.62 n.971 (4th ed. 2004) ("MAN. COMPLEX LITIG.") ....................................... 11, 12, 16, 23

6

7

### Rules

8

Fed. R. Civ. P. 23 ....................................................................................... 7, 16, 21

9

Fed. R. Civ. P. 23(e) ................................................................................... 1, 6, 12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION

Plaintiffs and proposed Class Representatives Cameron Park, Joshua Riley, Michael Adami, Megan Duncan, Benito Alicea Jr., Hasan Daas, Phillip Garcia, Brad Grier, Wesley Inman, Matt LeBoeuf, Lloyd Trushel, Mark White, and Dongsheng Liu (collectively, "Plaintiffs") respectfully submit for the Court's preliminary approval a proposed nationwide class action settlement (the "Settlement[1]"), with the consent of Defendants Zuffa, LLC d/b/a Ultimate Fighting Championship and UFC; and NeuLion, Inc. (collectively, "Defendants").

This case involves a common dispute stemming from an August 26, 2017 "unprecedented superfight" between boxing legend Floyd Mayweather and UFC superstar Conor McGregor – one of the biggest sporting events in history (the "Fight"). Hundreds of thousands of fans purchased the Pay-Per-View ("PPV") broadcast of the Fight for a standard price of $99.99, but certain fans who purchased the online streaming of the PPV through Defendants could not view the entire Fight, parts of the Fight, or parts of the preliminary bouts that immediately preceded the Fight due to a common technical problem in Defendants' system, denying Class Members the ability to see the entire broadcast in real time. Five of the resulting class action lawsuits that were filed were voluntarily consolidated before this Court. The consolidation was the product of extensive mediation, leading to the class settlement now placed before this Court which represents a reasonable compromise by all parties in the face of highly disputed legal and factual issues. The parties now request that it be preliminarily approved as fair, adequate and reasonable to the Settlement Class under Fed. R. Civ. P. 23(e) so Class Members can be notified of its terms and their options, and a Fairness Hearing scheduled for the Court to make a final decision whether to approve its terms.

## II.    RELEVANT BACKGROUND REGARDING THE CLASS DISPUTE

### A.    The Parties

---

[1] Capitalized terms, as referenced in this Motion, refer to the terms defined in Section I of the parties' Settlement Agreement, copy attached as **Exhibit 1** to the Declaration of Hart Robinovitch in Support of Motion for Preliminary Approval of the Settlement, filed concurrently.

Defendant Zuffa LLC ("Zuffa" or "UFC") is a Las Vegas, Nevada based sports company that specializes in the promotion of mixed martial arts matches. Zuffa conducts business under the well-known trade names "Ultimate Fighting Championship" and "UFC." *See* www.ufc.com. The company was founded in 2001 and quickly ascended to a prominent position in the promotion and staging of combat sports. On its website it describes itself as "the largest Pay-Per-View event provider in the world." *See*, http://www.ufc.com/discover/ufc. Among other things, Zuffa owns and operates the UFC.com website under which consumers can purchase and view PPV streams of live bouts through its Fight Pass digital subscription service, smartphone app and/or other platforms. With respect to the Fight, Zuffa was one of the streaming rights holders authorized to market and sell the PPV stream to consumers. NeuLion, Inc. ("NeuLion") describes itself as "a worldwide leader specializing in digital video broadcasting, distribution and monetization of live and on-demand sports and entertainment content to virtually any connected device." *See* www.NeuLion.com.[2] Zuffa contracted with NeuLion to provide all aspects of the PPV broadcast to consumers purchasing the PPV of the Fight through Zuffa/UFC's platforms.

**B.    The Fight**

The Action arises out of Defendants' promotion, advertisement, and streaming of the Fight, which was billed to the American public (and worldwide) as one of the biggest prize fights ever and dubbed by UFC, the media, and others as "The Money Fight" and "The Biggest Fight in Combat Sports History." The Fight was unique as, for the first time, it pitted a boxing champion (Mayweather), against an ultimate fighting/mixed martial arts champion (McGregor), adding significant intrigue and hype to the sporting event. The Fight, ultimately won by Mayweather

---

[2] *See* Chris Smith, *Meet the Company Quietly Behind Streaming McGregor vs. Mayweather to Millions*, Forbes (Aug. 24, 2017, 11:55 AM), https://www.forbes.com/forbes/welcome/?toURL=https://www.forbes.com/sites/chrissmith/2017/08/23/neulion/&refURL=https://www.google.com/&referrer=https://www.google.com/; Anthony Noto, *This N.Y. Company is making sure the Mayweather McGregor bout streams without a hitch*, N.Y. Bus. J. (Aug. 25, 2017), https://www.bizjournals.com/newyork/news/2017/08/25/this-company-is-making-sure-the-mayweather.html; Tom Huddleston Jr., *This Tech Company is Streaming the Mayweather-McGregor Fight for UFC, Sky Sports,* Fortune (Aug. 25, 2017), http://fortune.com/2017/08/25/neulion-streaming-mayweather-mcgregor-fight-ufc-sky-sports/.

with a technical knockout in the 10th round, is believed to have been one of the highest grossing and most watched fights in boxing history. Total PPV sales from the Fight exceeded $450 million with over 4.4 million domestic "PPV buys."[3] 275,937 people purchased the ability to view the fight by means of online streaming through Defendants. The focus of this case is on a subset of those purchasers who experienced streaming disruptions, as described below. Plaintiffs asserted no claims respecting pay-per-view purchases through television providers, which accounted for the overwhelming majority of pay-per-view purchases and which were not affected by the issues with the streaming service.

**C.    The Problem**

While the Fight was an exciting sporting event that millions of sports fans wanted to see, with significant hype and pent-up demand, a problem arose with certain online streaming providers prior to the Fight, including Defendants. Certain consumers who purchased the PPV Fight from Zuffa via its various platforms including UFC.com, UFC.tv, UFC Fight Pass, and the UFC app (as well as through partners, Amazon.com, Inc., Apple, Inc. and Microsoft Corporation), at the standard price ($99.99 HD), were unable to actually watch the complete Fight under the license purchased due to technical difficulties and downloading problems, frustrating their PPV transactions and ability to receive what they paid for. Approximately 275,000 customers who purchased the PPV streaming through Defendants were potentially affected. As reported at the time:

> The highly anticipated fight between Floyd Mayweather and Conor McGregor was officially delayed shortly before its scheduled starting time due to widespread technical issues preventing an unspecified number of paying subscribers from being able to watch live.
>
> * * *
>
> The delays are an embarrassing and perhaps costly interruption for one of the biggest sports events of the year. Social media was bombarded with complaints from fans who paid $100 to get the pay-per-view telecast of the fight only to get error messages and no live stream of the action. Hours into the 9 p.m. ET telecast, UFC acknowledged the issues in a tweet: "Due to overwhelming traffic you may be experiencing log in issues. This will be resolved shortly."

---

[3] Mike Chiari, *Report: Mayweather vs. McGregor Fight to Be 4.4M PPV Buys, Fails to Break Record*, Bleacher Report (Sept. 27, 2017), http://bleacherreport.com/articles/2735464-report-mayweather-vs-mcgregor-fight-to-be-44m-ppv-buys-fails-to-break-record.

Andrew Wallenstein, *Mayweather-McGregor Fight Delayed Due to Pay-Per-View Technical Problems*, Variety (Aug. 26, 2017, 9:07 PM), http://variety.com/2017/tv/news/floyd-mayweather-conor-mcgregor-pay-per-view-ufc-boxing-match-video-down-1202539815/

Shortly after the fight, Defendants provided refunds to some Class Members, however, they did not fully rectify the problem or make Plaintiffs and all Class members whole by refunding all Class members their PPV purchase and providing other necessary relief such as additional compensation for their injury, as well as reimbursement of other amounts spent by Class members in relation to the Fight, such as for food, drink, and other costs associated with hosting and entertaining guests. Refunds at the time also did not extend to purchasers who had been able to watch significant parts of the Fight or to those who purchased through Defendants' partners, such as Apple and Amazon, and for whom Defendants therefore do not directly possess the necessary information to process refunds.

**D.   The Litigation**

Following the Fight, class litigation was commenced in various forums against: (1) Zuffa, LLC d/b/a Ultimate Fighting Championship and UFC, Zuffa's parent company UFC Holdings, LLC, and its ultimate parent William Morris Endeavor Entertainment, LLC ("UFC Defendants"); (2) NeuLion, Inc., which was Zuffa's streaming partner; and (3) other defendants, such as Showtime.[4] The proposed Settlement now before the Court only relates to the class actions that involve the UFC Defendants and NeuLion, which have been voluntarily consolidated under a Consolidated Amended Complaint in the above-entitled action (the "Complaint" or the "Action").[5]   UFC Holdings, LLC and William Morris Endeavor Entertainment, LLC are not named defendants in the Complaint but will be released parties in the Settlement.   Plaintiffs allege that the broadcast outages occurred due to a common problem with NeuLion's streaming

---

[4] Claims against Showtime were held subject to arbitration in litigation filed in New York.
[5] Comprised of the following original related Actions: *Park v. Zuffa, LLC*, No. 2:17-cv-02282 (D. Nev. Aug. 29, 2017) ("*Park*"); *Riley v. Zuffa, LLC*, No. 2:17-cv-02308 (D. Nev. Sept. 1, 2017) ("*Riley*"); *Garcia v. Showtime Networks, Inc.*, No. 3:17-cv-01803 (S.D. Cal. Sept. 6, 2017) ("*Garcia*"); *Ferrandini v. Zuffa, LLC*, No. 2:17-cv-06781 (C.D. Cal. Sept. 14, 2017) ("*Ferrandini*"); *Daas v. NeuLion, Inc.*, No. 1:17-cv-06944 (S.D.N.Y. Sept. 12, 2017) ("*Daas*").

capacity causing widespread download outages when certain consumer went to watch the PPV broadcast on the evening of the Fight.[6] Plaintiffs assert claims for violation of various state consumer protection laws, and breach of contract and/or unjust enrichment, *inter alia*, and seek a refund of the purchase price of their pay-per-view orders as well as for the costs of expenditures related to viewing the Fight (such as food, beverages and other items purchased to use while viewing the Fight or hosting guests).

**E.    Discovery and Mediation**

Leading up to the filing of this proposed Settlement, the Parties participated in extensive negotiations including a mediation session on November 28, 2017 before experienced complex litigation mediator, Lizbeth Hasse of JAMS. Prior to the mediation, Plaintiffs served informal discovery requests on Defendants and obtained information regarding the reason, size and scope of the problem. UFC's records indicated that 275,937 PPV purchases were made on NeuLion-supported platforms, and as of the time of the mediation, there were approximately 182,274 consumers who had not received any refunds from Defendants, their partners, or personal credit card companies. Prior to the mediation, Plaintiffs' counsel also consulted with certain experts in the online broadcast and PPV industry. During the day-long mediation on November 26, the parties ultimately reached a mutually agreeable compromise on the legal and factual issues presented. All negotiations were at arms-length, hard-fought and at times, quite contentious. There was no discussion of fees or service awards until the end of the mediation session after agreement had been reached on all material components of relief to the class.

**F.    The Settlement**

As detailed more fully below and in the Settlement Agreement, the Settlement provides tiered refunds to Settlement Class members who complete and timely submit a claim form to the

---

[6]According to UFC, the problem was not one of insufficient capacity but instead one of incorrect assumption and inadequate testing by Neulion when they were asked to change their initial page format to meet UFC's desired specifications shortly before the Fight.  More specifically, UFC claims that Neulion tested its video streaming capabilities, but failed to account for the high number of database queries to its system once users had logged in to the "UFC event page" that had been reformatted from a "non-UFC event page" the day before the Fight.

Claims Administrator, based on the extent of the streaming disruption that they attest under penalty of perjury that they experienced. Class members will also receive compensation if they incurred out of pocket losses, beyond the purchase price, from their inability to live-stream the Fight. This compensation for out of pocket losses is in addition to the cash refunds that class members may claim, and will take the form of a 3-month UFC Fight Pass Credit, valued at $30 if Class member attests that they incurred more than $30 in expenses related to the PPV (such as on food and beverages purchased to consumer while watching the Fight or hosting guests), substantiated with receipts.[7] Alternatively, they can elect to receive $5 in additional cash.

The proposed Settlement, which includes a substantial refund component, satisfies—indeed, well exceeds—the preliminary approval criteria that a settlement be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Accordingly, Settling Plaintiffs seek preliminary approval of the Settlement, and provisional certification of a nationwide class for purposes of providing the Class with notice of the Settlement and an opportunity to opt-out, object, or otherwise be heard. Therefore, Settling Plaintiffs move the Court to take the initial steps in the settlement approval process by: (1) granting preliminary approval to the proposed Settlement, (2) provisionally certifying the proposed Settlement Class, (3) appointing the Settling Plaintiffs as Class Representatives and the undersigned attorneys as Class Counsel, (4) appointing Angeion Group as the Claims Administrator; (5) approving the proposed Notice Plan and Forms of Notice, and (6) scheduling the final Fairness Hearing and setting related deadlines such as those for objections to be filed.

### III.    THE PROPOSED SETTLEMENT

Subject to this Court's approval, the Settlement Agreement ("Agreement" or "SA") will resolve the Class claims of the Settling Plaintiffs and all members of the Settlement Class who do not exclude themselves by opting out. Set forth below is a summary which paraphrases the key terms of the Agreement, copy attached as **Exhibit 1** to the Declaration of Hart Robinovitch

---

[7] This aspect of the Settlement was particularly hard fought given that Zuffa's standard Terms of Use contain a waiver of any claims for consequential or special damages.

1 in Support of Motion for Preliminary Approval of the Settlement ("Robinovitch Decl.").

2 **A.    Certification of a Settlement Class**

3      The Parties have agreed and stipulated that the following Class can be certified under

4 Fed. R. Civ. P. 23 for settlement purposes:

> All Persons who, from a United States address, purchased access to stream the Event for viewing as a consumer on UFC.TV, the UFC mobile application, Amazon Fire TV, Apple TV, Microsoft Xbox, Roku, or on LG or Samsung devices.

7 SA ¶2.50. Excluded from the Settlement Class are: (a) Defendants and their employees,

8 principals, affiliated entities, legal representatives, successors and assigns; (b) any Person who

9 files a valid, timely Opt-Out request; (c) federal, state, and local governments (including all

10 agencies and subdivisions thereof, but excluding employees thereof) and (d) the judge(s) to

11 whom this Action is assigned and any members of his, her, or their immediate families; and (d)

12 all Persons who timely and properly exclude themselves from the Settlement Class as prescribed

13 by the Agreement. SA ¶2.50. As described below, all requisite elements of Fed. R. Civ. P. 23(a)

14 and 23(b)(3) are satisfied with regard to the Settlement Class.

15 **B.    Benefits of the Monetary Relief Settlement**

16      **1.    Refund for purchase of streaming access available to Settlement Class members.**

17      Those individuals in the Settlement Class who have not previously received refunds may

18 select relief from the single highest Tier below for which they qualify (SA ¶5.1):

- **Tier 3.** A Settlement Class Member who elects to fill out the Claim Form section for Refund Tier 3, and who attests, under penalty of perjury, that s/he purchased access to stream the Event, and attempted to log on to view the Main Bout but could not do so, such that s/he was unable to watch *more than five minutes* of the Main Bout between McGregor and Mayweather due to streaming disruptions, may recover $99.99. This represents a full refund of the purchase price, save applicable sales taxes.

- **Tier 2.** A Settlement Class Member who elects to fill out the Claim Form section for Refund Tier 2, and who attests, under penalty of perjury, that s/he purchased access to stream the Event, and attempted to log on to view the Main Bout but could not do so, such that s/he was unable to watch *up to five minutes* of the Main Bout between McGregor and Mayweather due to streaming disruptions, but was able to view the remainder of the Main Bout without disruption, may recover $50.00.

- **Tier 1.** A Settlement Class Member who elects to fill out the Claim Form section for Refund Tier 1, and who attests, under penalty of perjury, that s/he purchased access to

stream the Event, and attempted to log on to view the Preliminary Bouts but could not do so, such that s/he was unable to view *any portion* of the Preliminary Bouts that s/he sought to view due to streaming disruptions, but was able to view the entire the Main Bout without disruption, may recover $25.00.

**2. Reimbursement for out-of-pocket expenses available to Settlement Class members.**

Affected Settlement Class Members, including those who have previously received refunds, may claim additional benefits if they incurred out-of-pocket expenses in anticipation of being able to view the stream of the Fight, including, but not limited to, food and beverages for the specific purpose of consuming them with others while viewing the stream of the Fight pursuant to the following two options (SA ¶5.2):

- **Option A.** A Settlement Class Member who elects to fill out the Claim Form section for Reimbursement for Expenses, and who attests, under penalty of perjury, that s/he incurred up to $30.00 in Expenses, may recover one month of free access to UFC Fight Pass. No receipts or other separate documentation are necessary for an Option A claim.

- **Option B.** A Settlement Class Member who elects to fill out the Claim Form section for Reimbursement of Expenses; who attests, under penalty of perjury, that s/he incurred more than $30.00 in Expenses; and provides Proof of Claim documentation regarding the same, may elect to receive either (1) three months of free access to UFC Fight Pass, or (b) $5.00 in cash, at the Claimant's choosing. Proof of Claim documentation for a Reimbursement of Expenses Option B claim must include either: (i) copies of receipts demonstrating that s/he incurred more than $30.00 in Expenses; or (ii) a sworn and notarized statement that describes in detail Expenses that totaled more than $30.00. If the notarization requirement above in (ii) poses a financial hardship for the Settlement Class Member, s/he may explain this hardship in a detailed statement. The Settlement Administrator will not take the absence of notarization into account when considering the sufficiency of a statement of Expenses if such financial hardship is explained in the statement.

**C. Claims Procedure**

The Settlement Agreement calls for the settlement notice to be distributed to the Class primarily by email, as that was the medium used by each class member to purchase the PPV of the Fight. *See* Direct Email Notice, Exhibit D to SA. As each Settlement Class Member used email to transact with Defendants, this method of notice is reasonably calculated to reach them. If the Claims Administrator receives notification that any emails sent to Settlement Class members bounce back or are returned undeliverable, a second email will be sent, and if this second email fails, then a Short Form Notice will be sent by first class mail. *See* Short Form Notice, Exhibit E to SA. Both the Email Notice and Short Form notice will direct Settlement Class Members to the Settlement Website where the Long Form Notice (*See* Long Form Notice,

Exhibit C to SA.), as well as other relevant Documents such as the Settlement Agreement, Claim Forms, Consolidated Amended Complaint and Exclusion Forms will be available for viewing, downloading and/or printing. *See* Short Form Notice, Exhibit E to SA. In addition, the Settlement Administrator will establish a toll-free support line that will provide Class Members with general information about the Action and will respond to frequently asked questions about the Action and claim procedure. SA ¶¶8.1-8.8.

To ease the burden on Class members, the Claim Forms on the Settlement Website can be completed electronically, with certain data such as Class Member contact information and IP address automatically populated to the Class Forms where able. *See*, Claim Form, Exhibit A to SA. If a Class member is unable to submit their Claim Form electronically, they will have the option to print or request a paper claim form to submit via mail. SA ¶6.2.

Review of the proposed Long Form, Short Form and Email Notice to Class shows that they each sufficiently provide Class Members with: (1) a short, plain statement of the background of the Actions, the Class certification, and the essential terms of the Settlement; (2) an appropriate means for obtaining additional information regarding the Settlement and the Action; (3) appropriate information concerning the procedure for objecting or opting-out from the Settlement, if they should wish to do so; and (4) information that any relief to Class Members is contingent on the Court's final approval of the Settlement. SA ¶8.2.

**D.    Release of Claims**

In consideration for the Settlement, Class Representatives, Plaintiffs, and each Class Member, on behalf of themselves and any other legal or natural persons who may claim by, through or under them, will be subject to the release and waiver of rights related to the claims asserted in the Action, which involve the advertising, marketing, promotion, and purchase of access to stream the Fight, and any monetary relief or damages flowing from such claims including restitution, disgorgement, and consequential damages. SA ¶¶12.1-12.7.

**E.    Opt-Out Procedure and Objections**

Any Class Member may request to be excluded from the Settlement Class by sending a written request for exclusion to the Settlement Administrator within 60 calendar days from the

date of Notice. The opt-out request must contain the Class member's name, address, the words "I wish to be excluded from the *Park v. Zuffa, LLC, et al.* Class Action," and signature. SA ¶9.3.

Any Settlement Class Member who intends to object to the Settlement must also do within sixty (60) days of the Notice Date (the "Objection Deadline"). SA ¶9.1. In order to object, the Settlement Class Member must file with the Clerk of the Court, and provide a copy to the Settlement Administrator, Class Counsel, and Defendants' counsel, a document that includes the basic information set forth in ¶9.1 of the Settlement Agreement including a detailed statement describing the grounds for their objection; any documents on which the objection is based; whether they intend to appear at the Fairness Hearing; the identity of any counsel representing them and a list of any other objection that they or their counsel filed to any class action settlement in the last five years.  This information is reasonably sought in order to assist the Court in determining whether any objection is made by a professional objector that potentially has exterior motives.

**F.    Claims Administration**

Plaintiffs, with Defendants' assent, request that the Court appoint Angeion Group as the Settlement Administrator.  Angeion Group is a well-known, reputable claims administration company with significant experience in electronic notice issues. *See generally*, www.angeiongroup.com. As the Settlement Administrator, Angeion Group will be charged with providing notice to the Class, maintaining the Settlement Website, processing claim forms, responding to Class Member inquiries about the settlement, and distributing refunds and other relief to the Class in accordance with the terms of the Settlement. SA ¶6.1. Defendants have agreed to pay all actual fees and expenses for the costs of preparing and disseminating Notices, and other administrator expenses, including payments made for the services of the Settlement Administrator. SA §X.

**G.    Class Representative Service Awards.**

The Settlement provides a service award for the named Plaintiffs who are named as Class Representatives in recognition of their service to and efforts on behalf of the Class. SA ¶7.2. Class Counsel intend to petition the Court for incentive awards up to a maximum total amount of

$1,500 for each of the Class Representatives based on their time, effort and risks assumed in helping to secure the pool of settlement benefits for absent class members. These incentive awards are in addition to the relief the Class Representatives will be entitled to under the terms of the Settlement. Throughout the Litigation, these Class Representatives have participated in the development of the case, kept informed of the Litigation as it developed and kept abreast of the proposed Settlement. While not required to support the settlement, after review of the final settlement agreement, all do.

Enhancement awards like the ones requested here are appropriate. Unlike unnamed Class members, who will enjoy the benefits of the Plaintiffs' efforts without taking any personal action, the named Plaintiffs made themselves available as witnesses, subjected themselves to all the obligations of named parties and assumed certain risks. Incentive awards, which serve as premiums in addition to any claims-based recovery from the Settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See, e.g.*, *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Staton v. Boeing*, 237 F.3d 938, 977 (9th Cir. 2003); MANUAL FOR COMPLEX LITIGATION §21.62 n.971 (4th ed. 2004) ("MAN. COMPLEX LITIG.") (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). Any amounts sought here will be modest in amount and reasonable. No amounts have been promised to any proposed Class Representative and the amount of any Service Award awarded, if any, will be determined by the Court in its sole discretion.

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT

### A.    Settlement and Class Action Approval Process.

#### 1.    Policy encourages settlement.

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also, e.g.*, *Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). Class action lawsuits readily lend themselves to compromise because

of the difficulties of proof, the uncertainties of the outcome, and the typical length, costs, and risks of the litigation. As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("[S]trong judicial policy...favors settlements, particularly where complex class action litigation is concerned."); 4 NEWBERG ON CLASS ACTIONS §11.41 (4th ed. 2002) ("NEWBERG") (collecting cases). The traditional means for handling claims like those at issue here – individual litigation – would unduly tax the court system, receive a massive expenditure of public and private resources, and given the relatively small value of the claims of the individual Class members, would be impracticable. The proposed Settlement is the best vehicle for Class members to receive the relief they are entitled in a prompt and efficient manner.

### 2.    Three-step procedure for approval of class action settlements.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

1) Preliminary approval of the proposed Settlement at an informal hearing;
2) Dissemination of notice of the Settlement to all affected Class Members; and
3) A formal "fairness hearing" or final settlement approval hearing, at which Class Members may be heard regarding the Settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

MAN. COMPLEX LITIG. §21.6. This procedure, used by courts in this Circuit and endorsed by class action commentator Herbert Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. 4 NEWBERG §11.25.

With this motion, Settling Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. A class action may not be compromised or settled without the Court's approval. Fed. R. Civ. P. 23(e). The purpose of preliminary evaluation of proposed class action settlements is to allow the judge to make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and therefore whether notice of the certification, proposed settlement, and date of the final fairness hearing is worthwhile. MAN. COMPLEX LITIG., §21.632.

The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *City of Seattle*, 955 F.2d at 1276; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)(Ninth Circuit has "repeatedly stated that the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof"); Rule 23(e)(1)(C) Advisory Comm. Notes to 2003 Amendments ("Subdivision (e)(1)(C) states the standard for approving a proposed settlement that would bind class members. The settlement must be fair, reasonable, and adequate.").

### 3.    Standard for preliminary approval.

Preliminary approval does not require the Court to answer the ultimate question of whether a tentative settlement is fair, reasonable and adequate. That decision is instead made only at the final-approval stage, after notice of the Settlement has been given to the Class Members and they have had an opportunity to voice their views. *See* 5 James Wm. Moore, MOORE'S FED. PRAC. § 23.83(1), at 23-336.2 to 23-339 (3d. ed. 2002). Preliminary approval is merely the prerequisite to giving notice so that members of a class have "a full and fair opportunity to consider the proposed [settlement] and develop a response." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

Courts have consistently noted that the standard for preliminary approval is less rigorous than the analysis at final approval. Preliminary approval is appropriate as long as the tentative settlement falls "within the range of possible judicial approval." 4 NEWBERG § 11.25 (quoting MAN. COMPLEX LITIG. § 30.41 (3d ed. 1997)). "At the preliminary approval stage, the 'fair, reasonable, and adequate' standard is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Schoenbaum v. E.I. DuPont De Nemours & Co.*, No. 4:05CV01108 ERW, 2009 WL 4782082, at *3 (E.D. Mo. Dec. 8, 2009) (citing *White v. Nat'l Football League*, 836 F. Supp. 1458, 1466 (D. Minn. 1993); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 (E.D. Pa. 2001)). Indeed, plaintiffs need only surpass a 'low bar' in order to obtain preliminary approval of class action settlement. *See, e.g.*, *Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *9 (E.D. Cal. July 6, 2015). Courts in this

Circuit agree that the two-step process for class settlement approval begins with a relatively low hurdle: "at the preliminary approval stage, court need only determine whether the proposed settlement is within the range of possible approval." *Gamble v. Boyd Gaming Corp.*, No. 2:13-cv-01009-JCM-PAL, 2016 WL 3693743, at *5 (D. Nev. July 11, 2016).

**B.      The Criteria for Settlement Approval Are Satisfied.**

In *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004), the Ninth Circuit noted that as a general rule, a district court must consider the following factors when examining the fairness of a proposed settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. On a preliminary basis, the proposed Settlement satisfies these standards. *See also Hanlon,* 150 F.3d at 1026.

**1.      The settlement is the product of serious, informed, and arm's-length negotiations after the parties conducted extensive investigation and analysis.**

This proposed Settlement is the result of extensive negotiations, including an intensive mediation session conducted by Lizabeth Hasse of JAMS on November 28, 2017. The Parties have investigated the facts and analyzed the relevant legal issues regarding the claims and defenses asserted in the Action. Prior to mediation, Plaintiffs engaged in informal discovery, reviewed information provided by Defendants, retained and consulted with an expert concerning the streaming issues the online delivery of products similar to the Event, including the possible root causes of the issues observed. The Parties have also agreed that additional confirmatory discovery will occur prior to the Fairness Hearing, such as taking of Rule 30(b)(6) depositions, to confirm the information provided in informal discovery.

**2.      The settlement provides substantial relief for class members.**

Although a Settlement need not secure the maximum amount demanded in the Complaint to be reasonable, this one provides for *full* refunds to those who could not view at least five minutes of the Fight and substantial partial refunds for those who missed any part of the Fight or

the preliminary bouts. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *See Officers for Justice,* 688 F.2d at 628 (citations omitted). "That a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) (quotation omitted). In this case, Plaintiffs are obtaining a near equivalent to the recovery initially sought. Class members who attest that they missed more than five minutes of the Main Bout between McGregor and Mayweather will receive full refunds of the $99.95 PPV purchase price. Given the circumstances and risks presented here and the expeditious resolution of claims which continued litigation delays, the Settlement described herein is reasonable.

### 3. The recommendations of experienced counsel favor approval of the settlement.

The judgment of experienced counsel regarding the Settlement is entitled to great weight. *Harris v. U.S. Physical Therapy, Inc.*, No. 2:10-cv-01508-JCM-VCF, 2012 WL 3277278, at *7 (D. Nev. July 18, 2012) ("Based on counsels' knowledge of the specific facts of this action, experience in settlements such as this, and opinion that the settlement should is fair, reasonable, and adequate, the court finds that this factor weighs in favor of granting preliminary approval of the settlement.") (citing *City of Seattle*, 955 F.2d at 1291). *See also*, *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Here, counsel for the Parties endorse the Settlement as fair, adequate, and reasonable. Plaintiffs' Counsel here have extensive experience in prosecuting and litigating consumer class action cases. Robinovitch Decl. at ¶¶4-19. Here proposed Class Counsel have conducted extensive investigation in this case, retained an expert, demanded information in advance of the mediation

and in discussions with defendants' counsel. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate under the applicable factors weighs heavily in favor of this Court's approval of the Settlement.

### 4.      The named Plaintiffs support the settlement.

Although still early, the named Plaintiffs seeking to be appointed Class Representatives have actively participated in this Litigation by staying apprised of developments and working with counsel to develop case theories and claims based on their PPV transaction and viewing experiences. Moreover, they have been kept informed about the progress of settlement negotiations and mediation and the proposed Settlement. The Plaintiffs and proposed Class Representatives have been informed of the nature of the Settlement and believe that the Court's approval of it would serve the best interests of the Class. Consistent with *Radcliffe v. Experian Info. Sol. Inc.*, 715 F.3d 1157 (9th Cir. 2013), the named Plaintiffs were not required to support the Settlement in order to seek to serve as a Class Representative or to petition for a Class Representative Service Award.   Instead, each proposed Class Representative was asked to independently evaluate the settlement and only sign it if they felt the terms were fair to the class as a whole when weighed against the risks of continued litigation. The Plaintiffs represent the interests of the Settlement Class in asking the Court to approve this Settlement.

## V.      CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Finally, Settling Plaintiffs request that the Court provisionally certify a nationwide class for settlement purposes. Provisional certification permits notice of the proposed Settlement to the Class to inform Class members of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt-out or object, and of the date, time, and place of the formal fairness hearing. *See* MANUAL FOR COMPLEX LITIG., §§21.632, 21.633.

The decision whether to certify these actions as class actions is committed to the sound discretion of this Court within the guidelines set forth in Fed. R. Civ. P. 23. *See, e.g.*, 4 NEWBERG §11.27; *Hanlon*, 150 F.3d at 1026; *Acosta v. Trans Union*, LLC, 240 F.R.D. 564, 571 (C.D. Cal. 2007). In exercising its discretion, however, this Court is obliged to "accept[] the allegations in the plaintiffs' complaint as true so long those allegations are sufficiently specific to

permit an informed assessment as to whether the requirements of Rule 23 have been satisfied." *Foster v. Oakland*, No. C-05-3110 MHP, 2007 WL 219796, at *5 (N.D. Cal. Jan. 29, 2007); *see also*, *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). "The merits of the class members' substantive claims are generally irrelevant to this inquiry." *Foster*, at *5.

The courts have long regarded "consumer claims" as "particularly appropriate for class resolution." *White*, 2002 WL 1809084, at *15; *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly certified for class treatment"). As set forth below, there is no basis for regarding these consumer claims any differently. In fact, the Ninth Circuit in *Hanlon*, 150 F.3d at 1026 specifically approved the class certification of a similar nationwide class for settlement purposes. *See also, In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML02151, 2012 WL 7802852 at *5, (C.D. Cal. Dec. 28, 2012); *In re Toyota*, 2013 WL 3224585, at *5 (C.D. Cal. June 17, 2013) (same).

**A.    Plaintiffs' Claims Satisfy the Threshold Requirements for Class Certification.**

    **1.    The proposed Class is ascertainable.**

Although not specified in Rule 23, courts imply a prerequisite that the proposed class be ascertainable. *See, e.g.*, *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014). "The definition must be precise, objective, and presently ascertainable." *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 2:06-cv-00225-PMP-PAL, 2008 WL 3179315, at *20 (D. Nev. June 20, 2008) (citation omitted). Ascertainability may be satisfied if it is "administratively feasible" for the court to determine whether a particular individual is a member, though this is not a prerequisite to certification. *Briseno v. ConAgra Foods, Inc.*, 944 F.3d 1121 (9th Cir. 2017). Here, the proposed Class is ascertainable. Defendants have within their possession sales records and email receipts for each individual Class member giving the precise number of affected individuals, and their electronic and/or physical mailing address.

While Defendants have download information from certain class members whose purchase records they possess, their data is not complete in regards to purchases not made directly through Defendants (that is, some is maintained by third-party Partners, Amazon, Apple

and Microsoft and claimed to be non-accessible) warranting the claims-made procedure where Settlement Class members attest to the amount of online streaming of the Fight they claim was interrupted, as well as provide the IP addresses of the network used to watch it thereby providing the missing information needed for verification. Therefore the ascertainability requirement is met. Defendants maintain the contact information for each class member and the data required to verify the extent of any streaming interruption is provided by the class member.

### 2.    The Class is so numerous that joinder is impracticable.

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. *Hanlon*, 150 F.3d at 1019. "This Court is aware that there is no exact numerical formula which is used to determine whether a group of plaintiffs is sufficiently numerous to be certified as a class and that this determination must be made on a case by case basis." *Hernandez v. Alexander*, 152 F.R.D. 192, 194 (D. Nev. 1993). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Costelo v. Chertoff*, 258 F.R.D. 600, 607 (C.D. Cal. 2009) (internal citation omitted). According to Defendants' sales records, there are over 275,000 people who meet the Settlement Class definition. As it is impracticable to join all those individuals in a single action, "the numerosity requirement is certainly met in this case." *Acosta*, 240 F.R.D. at 571.

### 3.    There are questions of law or fact common to the claims

Rule 23(a)(2) requires the party seeking certification to show that there are questions of law or fact common to the class. This rule "has been construed permissively." *Hanlon*, 150 F.3d at 1019. "[A] common question must be of such a nature that it is capable of classwide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quotation omitted). Commonality is a permissive requirement, and "not all questions of fact and law need be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019-20.

The commonality and predominance hurdles are satisfied here. The central dispute

concerning commonality in this case turns on Defendants' collective conduct in marketing, promoting, and streaming the Fight, and failing to provide a product consistent with representations made to Class Members prior to their purchase. Common questions of law and fact include whether Defendants breached Class Members' contracts for streaming the Fight, whether Defendants' conduct violates the Nevada Deceptive Trade Practices Act ("NDTPA"), and what caused the Defendants' streaming issues leading to the streaming interruptions.

These key issues are entirely common to the class and if the case proceeded, would be resolved based on common facts and evidence. First, Class Members all transacted with Defendants in common ways, purchasing a common product (streaming access to the Fight) through the internet. Second, common law applies to all Settlement Class members claims. Zuffa's Terms of Use contain: (1) a common forum selection clause calling for all claims to be filed in Nevada courts, and; (2) a common choice of law clause calling for uniform application of Nevada law.[8] *See* CAC ¶97. Thus, even though many Class Members reside outside of Nevada, Nevada contract law and the NDTPA apply equally to all. Third, the online streaming interruptions were caused by a common technical failure at NeuLion which caused a capacity shortage and the service interruptions. The only variation is the length of the disruption suffered by each Settlement Class member – a fact addressed through the Claim Forms and subject to verification. Finally, the relief sought – refunds and damages for out of pocket expenditures is common. In order best tailor the relief to the degree of damage each Class Member suffered, a tiered recovery system is adopted on the Claim Form which is appropriate in class actions.

### 4.    The claims of the named Plaintiffs are typical of the Class.

Rule 23(a)(3) requires that the class representatives' claims are typical of the class. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members

---

[8]    As the forum selection clause in Zuffa's standard Terms of Use is applicable to all class members' claims, and calls for uniform application of Nevada law, there are no concerns regarding choice of law or state-law variations under *In re Hyundai and Kia Fuel Economy Litig.*, No. 15-56014, 2018 WL 505343 (9th Cir. Jan. 23, 2018).

have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992)). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* "Under the 'permissive standards' of this Rule, 'representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Hanlon*, 150 F.3d at 1020. The focus is "on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Costelo*, 258 F.R.D. at 608.

The proposed Class Representatives' claims here arise from a common course of conduct and legal theories. They have asserted during this litigation that Defendants engaged in a nationwide marketing scheme to induce Class Members' purchase of the Fight stream, and that due to a common technical difficulty at NeuLion, Class Members were unable to view the complete, uninterrupted Fight as purchased. Defendants were in control of the live-stream of the Fight, and as such, the cause of the streaming interruptions resulted from the same conduct emanating to each Class Member attempting to view the Fight. As discussed above, because Nevada law applies uniformly to each class member pursuant to the common Terms of Use, all class members pursue common legal theories without distinction.

### 5. The Settling Plaintiffs and Settling Plaintiffs' Counsel adequately represent the Class and should be appointed representatives of the Settlement Class.

The final threshold prerequisite for class certification is that the named plaintiffs be able fairly and adequately to protect the interests of the class. This determination turns on just two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957; *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 682 (D. Nev. 2008). Both components of the "adequacy" test are met here. Settling Plaintiffs have actively pursued this litigation on behalf of the Class Members, and share an identical interest in establishing Defendants' liability and obtaining a suitable remedy for the interruption of the Fight and related viewing activities. The proposed Class Representatives have suffered economic loss from the same conduct of Defendants. Similarly the proposed Class

Representatives have actively participated in and kept abreast of the Litigation while it developed. There can be no argument that Settling Plaintiffs will adequately represent the Class and have no conflicts or positions antagonistic to the Class.

The undersigned proposed counsel similarly satisfy the adequacy requirement and should be appointed Class Counsel. In retaining these firms the Plaintiffs and proposed Class Representatives have employed counsel who are "qualified, experienced and able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc.*, No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009) (internal quotation). With a litany of experience in class action and other complex litigation that proposed Class Counsel bring, there can be no doubt that they are adequate to represent the Settlement Class here. *See generally* Robinovitch Decl.

**B.    Plaintiffs' Monetary Relief Claims Satisfy the Requirements for Class Certification Under Rule 23(b)(3).**

This action is well-suited for certification under Rule 23(b)(3) because, particularly in the context of this Settlement, questions common to the Class Members predominate over questions affecting only individual Class Members, and the class action device provides the best method for the fair and efficient resolution of the Class's claims. Indeed, Defendants do not oppose provisional class certification for the purpose of effectuating the proposed Settlement. When addressing the propriety of class certification, the Court should take into account the fact that, in light of the settlement, trial will now be unnecessary, and that the manageability of the Class for trial purposes and need to calculate damages is not relevant to the Court's inquiry. *See Amchem*, 521 U.S. 591; *Hanlon*, 150 F.3d at 1021-23.

**1.    The predominance requirement is satisfied.**

A class action is appropriate under 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members..." Fed. R. Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Here, as the proposed Settlement is structured,

common questions of law and fact predominate over individual issues. Certain manageability concerns are eliminated as there will be no longer be a trial and certain objections are waived. Thus, the predominance requirement is satisfied.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 117 S.Ct. at 2249). If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Id.* at 1022. There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position. The main concern is "the balance between individual and common issues." *In re Wells Fargo Home Mortg.*, 571 F.3d 953, 959 (9th Cir. 2009).

Common issues predominate here. As explained in the commonality section above, due to a common choice of law clause in Defendant's Terms of Use common law applies to all Class Members' claims. The salient evidence necessary to establish Plaintiffs' claims is common to both the Class Representatives and Class Members– they would all seek to prove that Defendants' marketing and promotion of the Fight violated the NDTPA, that Defendants' had knowledge of the risks attendant to over-selling live-streams of the Fight without adequate testing, and that Defendants' conduct caused the interruptions of the live-streams of the Fight.

### 2. A class action is a superior method of resolving this dispute

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Rule 23(b)(3)'s non-exclusive factors are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of

concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action."

All of these factors are present here as it is clear that managing these disputes in a single class action before a single judge is preferable and more manageable than to require thousands of consumers to each bring individual actions where the filing fees alone would likely exceed the value of any potential recovery. The more likely outcome in that situation would be the absence of any actions and no remedy being provided to any Class Members.

## VI. THE COURT SHOULD APPROVE THE NOTICE PLAN AND SCHEDULE A FAIRNESS HEARING

### A. The Court Should Order Notice Be Provided to the Class.

Reasonable notice must be provided to Class Members to allow them an opportunity to object to the proposed Settlement. Rule 23 (e) requires notice of a proposed settlement "in such manner as the court directs." In a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both the Federal Rules of Civil Procedure 23(c)(2) and 23(e). Under Rule 23(c)(2), notice to the Class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617. For a proposed notice plan to meet the requirements of Rules 23 and satisfy due process, the notice must: (1) describe the essential terms of the settlement; (2) disclose any special benefits or incentives to the class representatives; (3) provide information regarding attorneys' fees; (4) indicate the time and place of the hearing to consider approval of the Settlement and the method for objection to and/or opting out of the Settlement; (5) explain the procedures for allocating and distributing Settlement funds; and (6) prominently display the address of class counsel and the procedure for making inquiries. MAN. COMPLEX LITIG. § 30.212. The Notice plan here satisfies these requirements.

In this case, notice will be accomplished primarily through email, as that was the medium in which Settlement Class members used to transact with Defendants when purchasing the PPV of the Fight in August. Defendants possess all Class Members' emails and can provide them to the Claims Administrator to send the Email Notice, in the form of Exhibit D to SA, to the Class. If any emails are returned undeliverable, the Claims Administrator will send a second email, and

if this second email fails, it will mail the Short Form Notice to the Class Member's last known physical address. Both the Email Notice and Short Form Notice will direct the Class member to the Settlement Website created by the Claims Administrator and contain the more detailed Long Form Notice (Exhibit C to SA), Claim Forms, Settlement Agreement, Consolidated Amended Complaint, and other relevant and helpful information. In order to allow Class Members to make inquiries, the Claims Administrator will maintain a designated toll-free line with a IVR system and voice mailbox, whereby common questions can be answered. If a Class Member has a legal question, the Claims Administrator can direct them to Class Counsel to respond.

Finally, because this dispute generated certain media attention in the aftermath of the Fight last August, distributing word of the settlement can be affected in a similar manner. The Parties have agreed to send a joint press release at the same time the Notice is sent. This should enhance Class Members' chance of learning of the Settlement. Overall the Notice plan is designed to inform Class Members of all requisite information about the Settlement in a manner that is designed to reach them through practicable means.  The Court should approve the Notice plan, appoint Angeion Group as Claims Administrator, and direct Angeion Group to carry out its duties consistent with the terms of the Settlement Agreement.

**B.     The Court Should Set Settlement Deadlines and Schedule a Fairness Hearing.**

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the Notices and publication of the Publication Notice, and deadlines for objecting to the Settlement and filing papers in support of the Settlement. Plaintiffs propose the following schedule, which the Parties believe will provide ample time and opportunity for Class Members to file Claim Forms, decide whether to request exclusion, or to object. Attached as Exhibit A to this Memorandum is a chart containing a proposed schedule / timeline of relevant dates, consistent with the Settlement Agreement and Proposed Order.

**C.     Scheduling a Final Approval Hearing is Appropriate.**

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. Proponents of the Settlement may explain in terms and conditions of the Settlement, and offer

1  argument in support of final approval. In addition, Settlement Class Members or their counsel

2  may be heard in support of, or in opposition to, the Settlement Agreement. The Court will

3  determine after the final approval hearing whether the Settlement should be approved, and

4  whether to enter a final order and judgment under Rule 23(e). Settling Plaintiffs request that the

5  Court set the date for a final fairness hearing approximately 90 days from the date of any order

6  granting preliminary approval.

7  <b>VII.    CONCLUSION</b>

8  For the foregoing reasons, Settling Plaintiffs respectfully request that the Court: (1) grant

9  preliminary approval of the proposed Settlement; (2) appoint the undersigned as Class Counsel;

10  (3) appoint Plaintiffs as Class Representatives; (4) provisionally certify the Class for settlement

11  purposes finding all elements of Fed. R. Civ. P. 23(a) and 23(b)(3) satisfied; (5) approve and

12  direct distribution to the Class of the Notices of Settlement and Claim Forms as set forth in the

13  Settlement Agreement; (6) approve the proposed deadline and schedule for filing opt-outs,

14  objections, and other pertinent dates; (7) appoint Angeion Group as the Claims Administrator

15  and direct it to carry out all attendant duties; and (8) schedule a final fairness hearing.

16  Respectfully submitted,

17  **ZIMMERMAN REED LLP**

18  Dated: February 5, 2018            /s/ Hart L. Robinovitch
19                                     Hart L. Robinovitch (Pro Hac Vice)
                                       E-mail: hart.robinovitch@zimmreed.com
20                                     14646 N. Kierland Blvd., Suite 145
                                       Scottsdale, Arizona 85254
21                                     (480) 348-6400 Telephone
                                       (480) 348-6415 Facsimile
22

23                                     David A. Markman (Nevada Bar No. 12440)
                                       **LIPSON, NEILSON, COLE, SELTZER &**
24                                     **GARIN, P.C.**
                                       E-mail: dmarkman@lipsonneilson.com
25                                     9900 Covington Cross Dr., Suite 120
                                       Las Vegas, Nevada 89144
26                                     (702) 382-1500 Telephone
                                       (702) 382-1512 Facsimile
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Caleb Marker (Pro Hac Vice to be filed)
**ZIMMERMAN REED LLP**
E-mail: caleb.marker@zimmreed.com
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, California 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

Aaron M. Olsen (Pro Hac Vice to be filed)
**HAEGGQUIST & ECK, LLP**
 E-mail: aarono@haelaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
(619) 342-8000 Telephone
(619) 342-7878 Facsimile

Eric A. LaGuardia (Pro Hac Vice to be filed)
**LAGUARDIA LAW**
E-mail: eal@laguardialaw.com
402 West Broadway, Suite 800
San Diego, CA  92101
(619) 655-4322 Telephone
(619) 655-4344 Facsimile

Timothy J. Peter (Pro Hac Vice to be filed)
**FARUQI & FARUQI, LLP**
E-mail: tpeter@faruqilaw.com
685 Third Avenue, 26th Floor
New York, NY  10017
(212) 983-9330 Telephone
(215) 277-5771 Facsimile

Bonner Walsh (Pro Hac Vice to be filed)
**WALSH PLLC**
 E-mail: bonner@walshpllc.com
P.O. Box 7
Bly, Oregon  97622
(541) 359-2827 Telephone
(866) 503-8206 Facsimile

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Drew Farrandini (Pro Hac Vice to be filed)
**SEVEN HILL LAW, APC**
E-mail: drewf@sevenhilllaw.com
411 West 7th Street, Suite 310
Los Angeles, CA  90014
(213) 235-3532 Telephone
(213) 488-1588 Facsimile

*Attorneys for Plaintiffs*

**EXHIBIT A – PROPOSED TIMELINE**

| Description of Settlement Event | Deadline |
|---|---|
| CAFA Notice | Within 10 calendar days after the Agreement is filed with the Court |
| Hearing Date on Motion for Preliminary Approval of Settlement | |
| Claim Period | Commences on Notice Date and Expires on Claims Deadline |
| Notice Date | No later than 30 days after the Court's entry of Preliminary Approval Order |
| Objection Deadline | 60 days after the Notice Date |
| Opt-Out Deadline | 60 days after the Notice Date |
| Application for Fees and Expenses | No less than 10 days prior to Objection Deadline, or 50 Days after Notice date |
| Application for Class Representative Service Awards | To be filed no less than 10 days prior to Objection Deadline, or 50 Days after Notice date |
| Opt-Out Request List | Settlement Administrator to provide counsel with list within 5 business days after Opt-Out Deadline. |
| Determination of Validity of Claims | Within 60 days of the end of the Claim Period |
| Report on Requests for Exclusion and Objections | 14 days before Final Approval Hearing |
| Motion for Final Approval | No fewer than 14 days before the Fairness Hearing |
| Fairness Hearing | 90 days after Notice Date |
| Claims Deadline | 30 days after entry of Final Approval Order |
| Effective Date | 10th calendar day after the last of: a) all Parties and their counsel, Defendants' Counsel and Class Counsel, have executed this Settlement; b) the Court has entered the Final Approval Order; and c) the date on which time to appeal or to seek permission to appeal from the Court's approval of the Settlement Agreement has expired or, if appealed, approval of the Settlement Agreement has been affirmed. |