ZIMMERMAN REED LLP
Hart L. Robinovitch (Admitted *Pro Hac Vice*)
 E-mail: hart.robinovitch@zimmreed.com
14646 N. Kierland Blvd., Suite 145
Scottsdale, Arizona 85254
(480) 348-6400 Telephone
(480) 348-6415 Facsimile

*Attorneys for Plaintiff*
*(Additional Counsel Listed Below)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CAMERON PARK, JOSHUA RILEY, MICHAEL ADAMI, MEGAN DUNCAN, BENITO ALICEA, JR., PHILLIP GARCIA, HASAN DAAS, BRAD GRIER, WESLEY INMAN, MATT LeBOEUF, LLOYD TRUSHEL, MARK WHITE, and DONGSHENG LIU on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, a Nevada Limited Liability Company (d/b/a "Ultimate Fighting Championship" and "UFC"); and NEULION, INC., a Delaware Corporation,<br><br>Defendants. | Case No. 2:17-cv-02282-APG-VCF<br><br>*Assigned to the Honorable Andrew P. Gordon*<br><br>**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF CLASS NOTICE; AND APPOINTMENT OF CLASS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: July 20, 2018<br>Time: 9:00 a.m.<br>Courtroom: 6C<br><br>Date Action Filed: Aug. 29, 2017 |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND.................................................. 3

    A.  General Nature of the Parties' Dispute and Compromise........................................ 3

    B.  The Settlement Terms ...................................................................................... 5

        1.  Tiered Refunds of the PPV Purchase Price Scaled to the Scope of Interruption .. 6

        2.  Compensation for Out-of-Pocket Expenses Incurred in Relation to PPV ............ 6

        3.  Administrative Expenses................................................................................ 7

        4.  Reasonable Attorneys' Fees and Costs ............................................................ 7

    C.  Aggregate Value of the Settlement ..................................................................... 8

    D.  Preliminary Approval and Class Notice .............................................................. 8

III. APPLICABLE LEGAL STANDARD ....................................................................... 9

IV. THE SETTLEMENT PROVIDES A FAIR, ADEQUATE, AND REASONABLE
    RESULT FOR CLASS MEMBERS....................................................................... 10

    A.  The Settlement is the Product of Serious, Informed, and Arm's-length Negotiations
       After the Parties Conducted Extensive Investigation and Analysis........................ 11

    B.  Amount Offered in Settlement......................................................................... 11

    C.  The Strength of Plaintiffs' Case; the Risk, Expense, Complexity, and Likely
       Duration of Further Litigation; and the Risk of Maintaining Class Action Status
       through Trial ................................................................................................. 12

    D.  The Extent of Discovery Completed and the Stage of the Proceedings ................. 13

    E.  The Experience and Views of Counsel ............................................................. 14

V.  THE SETTLEMENT PROVIDED THE BEST CLASS NOTICE PRACTICABLE.......... 14

VI. THE COURT SHOULD AFFIRM CERTIFICATION OF THE CLASS........................... 17

    A.  Plaintiffs' Claims Satisfy the Requirements for Class Certification ..................... 17

        1.  Ascertainability ......................................................................................... 17

        2.  Numerosity ................................................................................................ 18

        3.  Commonality .............................................................................................. 18

        4.  Typicality .................................................................................................. 20

5.  Adequacy of Representation .................................................................. 20

B.  The Proposed Class Meets the Requirements of Rule 23(b)(3) ............................ 21

1.  Predominance ...................................................................................... 22

2.  Superiority .......................................................................................... 23

VII.    CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union, LLC*,
    240 F.R.D. 564 (C.D. Cal. 2007) ........................................................................ 18

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................... 17, 22

*Briseno v. ConAgra Foods, Inc.*,
    944 F.3d 1121 (9th Cir. 2017) ..................................................................... 17, 18

*Capps v. Singer*,
    No. 15-cv-02410-BAS, 2016 U.S. Dist. LEXIS 161137 (S.D. Cal. Nov. 21, 2016) .............. 15

*Cavin v. Home Loan Ctr., Inc.*,
    236 F.R.D. 387 (N.D. Ill. 2006) ......................................................................... 17

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................ 10

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................. 9

*Costelo v. Chertoff*,
    258 F.R.D. 600 (C.D. Cal. 2009) ....................................................................... 20

*Dura-bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) .......................................................................... 22

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ............................................................................ 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................... *passim*

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................................ 20

*Harris v. U.S. Physical Therapy, Inc.*,
    No. 2:10-cv-01508-JCM-VCF, 2012 WL 3277278 (D. Nev. July 18, 2012) .................... 14

*Hernandez v. Alexander*,
    152 F.R.D. 192 (D. Nev. 1993) ......................................................................... 18

*Hester v. Vision Airlines, Inc.*,
    No. 2:09-cv-00117, 2009 WL 4893185 (D. Nev. Dec. 16, 2009) .............................. 21

*In re Hyundai and Kia Fuel Economy Litig.,*
    No. 15-56014, 2018 WL 505343 (9th Cir. Jan. 23, 2018)...................................... 19

*In re Syncor ERISA Litig.,*
    516 F.3d 1095 (9th Cir. 2008) .................................................................................. 9

*In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,*
    No. 8:10ML02151, 2012 WL 7802852 (C.D. Cal. Dec. 28, 2012)........................... 17

*In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,*
    No. 8:10-ML02151, 2013WL 3224585, (C.D. Cal. June 17, 2013)......................... 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,*
    MDL No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 148374 (N.D. Cal. Oct. 25, 2016) ......... 13

*In re Wal-Mart Wage & Hour Emp't Practices Litig.,*
    No. 2:06-cv-00225-PMP-PAL, 2008 WL 3179315 (D. Nev. June 20, 2008).......................... 17

*In re Wells Fargo Home Mortg.,*
    571 F.3d 953 (9th Cir. 2009) ................................................................................... 22

*Lane v. Facebook, Inc.,*
    696 F.3d 811 (9th Cir. 2012), *cert. denied,* 134 S. Ct. 8 (2013) ................................ 9

*Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.,*
    244 F.3d 1152 (9th Cir. 2001) ................................................................................. 22

*MacDonald v. Ford Motor Co.,*
    142 F. Supp. 3d 884 (N.D. Cal. 2015)....................................................................... 12

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
    339 U.S. 306 (1950) ................................................................................................ 14

*Nat'l Rural Telecomms. Coop. v. DirecTV,*
    221 F.R.D. 523 (C.D. Cal. 2004)............................................................................... 13

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ..................................................................................... 9

*Santoro v. Aargon Agency, Inc.,*
    252 F.R.D. 675 (D. Nev. 2008) ................................................................................. 21

*Staton v. Boeing,*
    327 F.3d 938 (9th Cir. 2003) .................................................................................... 21

*True v. Am. Honda Motor Co.,*
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ............................................................... 21, 22

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S.Ct. 2541 (2011)..................................................................................... 18

*White v. Imperial Adjustment Corp.*,
  No. Civ.A. 99-3804, 2002 WL 1809084 (E.D. La. Aug. 6, 2002) ........................... 17

*Wolin v. Jaguar Land Rover N. Am. LLC*,
  617 F.3d 1168 (9th Cir. 2010) ........................................................................... 23

**Statutes**

28 U.S.C. § 1407 ............................................................................................... 4

**Other Authorities**

7A C.A. Wright, A.R. Miller & M. Kane, Federal Practice & Procedure §1777 (2d ed. 1986) .. 21

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ *passim*

## I.    INTRODUCTION

The August 26, 2017 championship boxing match between Floyd Mayweather and Conor McGregor (the "Event") may have been a unique and exciting spectacle that exceeded many sports fans' expectations.  For many consumers who paid to obtain the live streaming of the Event through Defendant Zuffa, LLC and its broadcast partner, NeuLion, Inc., however, it was an extremely disappointing and frustrating evening due to a technical problem that caused some (but not all) streaming purchasers from being able to watch at least a portion of the Event in real time.  Several class action suits followed.  With an eye towards compensating all consumers whose viewing experiences were frustrated, the Parties quickly began negotiating a potential settlement.  Within a matter of weeks, the Parties in all cases were able to reach a reasonable settlement that provides full refunds for those Class members who attest that they missed more than five minutes of the main event or proportionate refunds to those who missed less of the event.  As described below and in Plaintiffs' prior motion for preliminary approval, the settlement of this class action represents a fair compromise that resolves highly disputed legal claims while providing valuable relief to the class.

In all respects, the settlement presented is fair, adequate, and reasonable to the Class and satisfies the standard for final court approval under Fed. R. Civ. P. 23(e).  While the claims period remains open until August 20, 2018, so far thousands of Class members have filed claims showing support for the Settlement.  Together with the many consumers whose purchase prices the Defendants and their partners refunded prior to the settlement, over 100,000 people obtained or will have obtained full or partial refunds of their purchases.  No Class member has objected to the Settlement terms and only three Class members have chosen to exclude themselves from the Settlement.

All those who brought the class action cases also support the settlement.  To that end, Plaintiffs Cameron Park, Joshua Riley, Michael Adami, Megan Duncan, Benito Alicea Jr., Hasan Daas, Phillip Garcia, Brad Grier, Wesley Inman, Matt LeBoeuf, Lloyd Trushel, Mark White, and Dongsheng Liu (collectively, "Plaintiffs") – with the consent of Defendants Zuffa, LLC d/b/a Ultimate Fighting Championship and UFC; and NeuLion, Inc. (collectively,

"Defendants") – now move for an order: (a) granting final approval to the Settlement establishing the Agreement as fair, reasonable, and adequate to the Settlement Class; (b) granting class certification of the Settlement Class;[1] (c) designating Plaintiffs as Class Representatives and finding that they have fulfilled their duties; (d) designating the Class Counsel conditionally approved in the Preliminary Order and finding that they have fulfilled their duties; (e) finding that the notice plan described in the Settlement Agreement and executed by the Settlement Administrator satisfies due process and all requirements of Fed. R. Civ. P. 23; (f) providing for the Release of all Released Claims and enjoining Settlement Class members from asserting, filing, maintaining, or prosecuting any of the Released claims; (g) ordering the entry of judgment for Defendants on all claims, causes of action, and counts alleged in the Action, and incorporating the Releases stated in the Agreement, with each of the Parties to bear its or his or her own costs and attorneys' fees, except as provided by the Agreement; (h) authorizing the payment by Defendants of Class Counsel's Fee and Expense Award and Class Representative Service Awards in accordance with the terms of the Agreement; and (i) preserving the Court's continuing jurisdiction over the administration of the Settlement and enforcement of the Agreement.

The Settlement before this Court represents an outstanding outcome given the risks that the Class faced in proving their claims, obtaining class certification, and in securing the pool of settlement benefits defined in the Settlement Agreement, as well as the efficient manner in which the litigation was handled allowing refunds for frustrated PPV purchases to be made available in relatively short order following the Event. As a result, Plaintiffs and Class Counsel respectfully request that the Court grant Plaintiffs' motion and approve the Settlement.

---

[1] All capitalized terms herein refer to terms and definitions in the Settlement Agreement unless otherwise noted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    General Nature of the Parties' Dispute and Compromise

On February 22, 2018, this Court granted preliminary approval of the Settlement.[2] (Dkt. 71). The Settlement stems from a consolidated class action challenging Defendants' defective Pay-Per-View ("PPV") streaming services rendered in connection with what was marketed as "The Biggest Fight in Combat Sports History" between boxing legend Floyd Mayweather and UFC superstar Conor McGregor. Depo. Tr., Santypal (Apr. 27, 2018) ("Santypal Tr."), at 37:22-38:12; Depo. Tr., Nunn (May 18, 2018) ("Nunn Tr."), at 24:7-9, attached to Robinovitch Decl. as Exhibits A and B, respectively (filed concurrently herewith). *See also* Robinovitch Decl. at ¶4 (Dkt. 98). Defendant Zuffa, LLC d/b/a Ultimate Fighting Championship and UFC ("UFC") marketed and sold the PPV packages to consumers in the Class and contracted with Defendant NeuLion, Inc. ("NeuLion") to provide the online streaming and other services.

Thousands of consumers who purchased the PPV of the Event from UFC via its various platforms including UFC.com, UFC.tv, UFC Fight Pass, the UFC app, LG, Samsung, and Roku (as well as through partners, Amazon.com, Inc., Apple, Inc., and Microsoft Corporation), at the standard price ($99.99), were unable to actually watch the complete, uninterrupted Event program under the license purchased due to a technical problem in Defendants' broadcast system, frustrating their PPV transactions and ability to receive what they paid for. *See, e.g.*, Santypal Tr. at 89:1-91:3; Nunn Tr. at 52:3-53:2. *See also* Robinovitch Decl. at ¶4 (Dkt. 98). In addition, because the Event was marketed as an epic, "can't-miss" sporting event, on par with a Super Bowl or World Series Game 7, and occurring on a Saturday night, Plaintiffs contend that many Class members who purchased streaming access to the Event hosted viewing parties for friends and relatives, incurring additional costs. These expenditures were claimed as additional damages since the quality of the Class member's experiences watching the PPV and

---

[2] For purposes of efficiency, Plaintiffs incorporate by reference the facts and information submitted in the Section entitled "Relevant Background Regarding the Class Dispute" in the Preliminary Approval Motion. (Dkt. 56, at 1-6).

entertaining guests turned negative as a result of the unexpected disruptions in the streaming services.

During and immediately after the Event, numerous consumers who bought the PPV voiced complaints in the press and social media about the streaming interruptions and resulting frustrations. In the days that followed, class actions were filed in various forums against Defendants and certain non-parties, including Showtime, seeking refunds and other relief. *See* Robinovitch Decl. at ¶¶10-12 (Dkt. 98). Also in the days that followed, Defendants refunded the full purchase price to consumers who Defendants' server logs showed did not successfully log in at all to stream the Event. Defendants, however, did not publicly announce that refund program or its contours or offer compensation for consequential and incidental costs incurred relative to the Event. Nunn. Tr. at 82:15-83:7; Santypal Tr. at 123:21-131:21. Showtime then moved to consolidate the actions pursuant to 28 U.S.C. § 1407 before the Judicial Panel on Multidistrict Litigation (the "JPML"). *Id.* at ¶13.

Although Defendants, along with Amazon, Apple, and Microsoft, collectively provided around 90,000 full refunds, another 182,000 purchasers—domestic and international— who may or may not have experienced partial streaming interruptions, did not receive refunds. Defendants demonstrated that many of these people watched the Event without difficulty, but Plaintiffs contended that many of these purchasers experienced at least some delay or interruption in their ability to watch the live stream of the Event. Defendants could not quantify the extent of these difficulties. Nunn. Tr. at 82:15-83:7 ("Q. So it's possible that all of those 182,000 people had some left of difficulty streaming the fight that night? A. It's possible – possible is a vague word. It's possible, yes.").

Recognizing the Parties' mutual interest in expeditiously resolving Plaintiffs' claims, in September 2017, the Parties agreed to mediate the dispute before experienced neutral Lizbeth Hasse of JAMS. *See* Robinovitch Decl. at ¶¶14-15 (Dkt. 98). In advance of the mediation the Parties commenced informal discovery to ensure both sides had the information necessary to negotiate and eventually reach an appropriate resolution. *See* Robinovitch Decl. at ¶16 (Dkt. 98). In order to prepare, Plaintiffs also consulted with an expert in wireless communications

and internet streaming. *Id.* at ¶17. After a hard-fought, day-long mediation with Ms. Hasse on November 22, 2017, the Parties reached a settlement in principle. *Id.* at ¶18. Proceedings before the JPML were subsequently suspended and five of the class action lawsuits that were filed against Defendants were voluntarily consolidated before this Court.[3] Following the mediation, additional negotiations on outstanding issues continued for several months and eventually led to the execution of a final Settlement Agreement and the filing of the Motion for Preliminary Approval on February 5, 2018. *Id.* at ¶20. Substantial confirmatory discovery was then conducted to verify the accuracy and validity of the information informally exchanged prior to the mediation and settlement negotiations. This included taking a 30(b)(6) deposition of Zuffa in Las Vegas on April 27, 2018, and a 30(b)(6) deposition of NeuLion in New York City on May 18, 2018. *See* Robinovitch Decl. at ¶23 (Dkt. 98).

Before the Motion for Preliminary Approval was filed, each Class Representative was presented with the Settlement Agreement and asked to independently evaluate and critique the terms, taking into account the overall benefits provided weighed against the risks of further litigation. *See* Decl. of Class Representatives (Dkt. 84-97). None were required to sign the agreement or promised anything of value to do so (including any service award). Instead, each was advised that they could still object to specific terms and be presented as a class representative upholding their duties to the Class. Each of the Class Representatives found the Settlement terms fair and signed the Agreement.

**B.    The Settlement Terms**

Under the Settlement, the Parties agreed that all persons who fall within the Settlement Class definition are entitled to share in the following categories of relief in exchange for their Release:

---

[3] Lawsuits filed against Showtime were held to be subject to mandatory arbitration.

**1.    Tiered Refunds of the PPV Purchase Price Scaled to the Scope of Interruption**

The primary benefit made available to Class members under the Settlement is the ability to obtain a refund that is scaled to the level of steaming interruption that the Class member attests that they experienced on their claim form.  Class members who attest that they missed more than five minutes of the main bout between Mayweather and McGregor will receive a full $99.99 refund.  Class members who attest that they missed some but less than five minutes of the main bout stand to receive $50 refunds (*i.e.,* half the purchase price).  Finally, those Class members who attest that they only experienced interruptions to the preliminary bouts but were able to see the entire main bout stand to receive $25 refunds (*i.e.*, a quarter of the purchase price).  The structure of this aspect of the Settlement is fair because it ties the amount of relief provided to the scope of the damage suffered. *See, e.g.*, *Etter v. Thetford Corp.*, No. 8:13-cv-0081-JLS-RNB (C.D. Cal.) (Dkts. 468, 539) (approving tiered settlement) (attached to Robinovitch Decl. as Exhibits C and D, respectively).

**2.    Compensation for Out-of-Pocket Expenses Incurred in Relation to PPV**

As indicated above, Plaintiffs contend that many Class members who purchased the PPV of the Event hosted viewing parties and incurred additional expenses for items such as food and beverages.  When the interruption occurred, the evening turned into a frustrating and embarrassing experience for those Class members, as well as their guests.  The Settlement attempts to compensate Class members for this additional damage by providing them either a one- or three-month subscription to UFC's popular Fight Pass feature.  UFC Fight Pass is a digital subscription service which gives fans access to exclusive live UFC events, fights, original, and behind-the-scenes content not available anywhere else, plus access to UFC's sizable mixed martial arts fight library.  Affected Class members, including those who have previously received refunds, who incurred more than $30.00 in expenses and substantiate their

claims with receipts or the like receive three (3) months access to Fight Pass.[4]   Alternatively, they may elect to receive $5.00 cash.   Affected Class members can claim one (1) month access to Fight Pass if they incurred up to $30.00 in out-of-pocket expenses on items such as food and beverages, but cannot produce receipts.   This aspect of the Settlement is valuable to Class members as most are UFC fans with an ongoing and continuing interest in UFC-related programing.   The Fight Pass subscription carries a retail price of $9.99 per month, so the proposed relief provides value proportional to the Class member's claimed loss. *See*, Santypal Tr. at 133:12-23; https://www.ufc.tv/page/fightpass (UFC Fight Pass subscription prices).   At the same time, a compromise was reasonable here given that, as Zuffa and NeuLion argued, their standard Terms of Use disclaimed the ability to claim any incidental damages. *See*, Terms of Use (Robinovitch Decl. Ex. 3, at Dkt. 56-6).

### 3.      Administrative Expenses

Under the Settlement, Defendants have agreed to fund the administrative expenses related to the dissemination of the Class Notice and the processing of claims by the Settlement Administrator.   As these costs do not reduce Class refunds, this is an additional benefit to the Class.

### 4.      Reasonable Attorneys' Fees and Costs

Like the costs related to Claims Administration, Defendants have agreed to separately pay Class Counsel's fees and costs up to a maximum of $900,000.00.   This payment, too, is an additional benefit for the Class because Counsel's fees will not be subtracted from the payments made to Class members, allowing them to receive the entire amount.

---

[4]   Class members unable to produce receipts could also qualify for this benefit by providing a sworn and notarized statement that described in detail Expenses that totaled more than $30.00. If the notarization requirement above poses a financial hardship, the Class member can explain this hardship in a detailed statement.   The Settlement Administrator will not take the absence of notarization into account when considering the sufficiency of a statement of Expenses if such financial hardship is explained in the statement.

### C. Aggregate Value of the Settlement

Plaintiffs contend that these lawsuits motivated Defendants and their partners to provide some $9 million in refunds in the days after the Event. Over 10,000 additional consumers have come forward already to claim benefits under the settlement valued in the millions. *See* Walitsky Decl. at ¶24 (filed concurrently herewith); Robinovitch Decl. at ¶24-27. (Dkt. 98). Ultimately, the Settlement is uncapped, so all Class members who validly attest that they missed all or part of the Event stand to be fully compensated pursuant to the terms of the Settlement without risk of any pro-rata reduction or ratchet-down based on the amount of other claims.

### D. Preliminary Approval and Class Notice

On February 22, 2018, following a motion hearing, this Court granted Plaintiffs' Motion for Preliminary Approval and approved the proposed Notice Plan and related deadlines consistent with the Parties' Settlement Agreement. (*See* Dkt. No. 71).

After preliminary approval of the Settlement, additional formal discovery was conducted confirming the initial findings and conclusions that formed the basis for the Settlement Agreement, including the exchange of written discovery and taking corporate depositions of both UFC's and NeuLion's representatives pursuant to Fed. R. Civ. P. 30(b)(6). Such discovery confirmed the cause of the problem that befell certain consumers who paid $99.99 to live stream the Event. *See, e.g.*, Nunn Tr. at 53:3-24, 62:10-65:11; Santypal Tr. at 106:13-107:25. Such discovery also informed the design of the claims process. It became clear that the tiered refund process would be necessary because Defendants were unable to determine from their records whether someone who logged in after the Event began did so by choice, because of a problem on the consumer's end, or because of the problem on Defendants' end challenged in these lawsuits. *See, e.g.*, Santypal Tr. at 89:14-90:5, 123:4-13; Nunn Tr. at 65:21-66:11.

Since preliminary approval, notice has been effected in accordance with the Settlement and this Court's Preliminary Approval Order. To date, the Settlement Administrator has received over 11,500 Claim Forms. *See* Walitsky Decl. The Claims Deadline is August 20, 2018, and more claims are expected. The deadline to submit a request for exclusion or an objection was June 8, 2018, and to the Parties' knowledge, no Class member or government

agency submitted an objection.  To date, the Claims Administrator has received just three requests for exclusion. *See* Walitsky Decl.

Finally, on May 29, 2018, in accordance with the Settlement and the Preliminary Approval Order, Plaintiffs filed their motion seeking attorneys' fees, costs, and service awards for representative Plaintiffs. (Dkts. 77-98).

## III.    APPLICABLE LEGAL STANDARD

"In evaluating a class action settlement under Rule 23(e), the district court determines whether the settlement is fundamentally fair, reasonable, and adequate." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citing Fed. R. Civ. P. 23(e)).  While the approval of class action settlements is committed to the sound discretion of this Court, as a matter of "express public policy," federal courts favor and encourage settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Syncor*, 516 F.3d at 1101 (same); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The Court has granted Preliminary Approval, Notice has been disseminated, and motions for fees and services awards have been filed.  Final Approval is appropriate now, subject to this Court's determination that the Settlement is fundamentally fair, reasonable, and adequate. *In re Syncor*, 516 F.3d at 1100.  "Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012), *cert. denied,* 134 S. Ct. 8 (2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

Approval of a class action settlement "is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026.  The Court must evaluate the fairness of the settlement in its entirety. *Id.*  ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness… [t]he settlement must stand or fall in its entirety.").

But courts must give "proper deference to the private consensual decision of the parties" because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties… must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties," and whether the settlement is fair, reasonable and adequate. *Id.* at 1027. Here the Settlement was reached after discovery and arm's-length negotiations conducted by capable counsel with the assistance of a well-respected mediator.  As detailed below, the Settlement terms are fair, reasonable and adequate in accordance with Rule 23(e).

## IV.    THE SETTLEMENT PROVIDES A FAIR, ADEQUATE, AND REASONABLE RESULT FOR CLASS MEMBERS

In deciding to approve a proposed class action settlement, the Court considers the following non-exhaustive factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004).

The Court analyzed several of these factors in its Preliminary Approval Order and found that they weigh in favor of preliminary approval. (*See* Dkt. 71, at ¶1).  Analysis of the factors weigh in favor of final approval now.  Indeed, the Settlement provides a significant financial recovery to eligible Class members, treats all Class members equitably, and has no obvious deficiencies.  Unsurprisingly, the initial reaction of Class members has been overwhelmingly positive.  The objection deadline has passed and no objections to the Settlement have been submitted.  Only three class members elected to opt-out of the Settlement Class.  While thousands of claims have been filed to date, the deadline for Claim submissions has not yet run. Therefore, the Court should confirm the findings that supported preliminary approval and grant final approval to the Settlement Agreement for the additional reasons enumerated below.

### A. The Settlement is the Product of Serious, Informed, and Arm's-length Negotiations After the Parties Conducted Extensive Investigation and Analysis

In preliminarily approving the Settlement Agreement the Court found that the Agreement was entered into after extensive arms-length negotiations by experienced counsel with the assistance and oversight of an experienced neutral. (*See* Dkt. 71, at ¶1).  The Parties have investigated the facts and analyzed the relevant legal issues regarding the claims and defenses asserted in the Action, engaged in informal discovery, and consulted with experts. Since preliminary approval, the Parties have also conducted additional confirmatory discovery such as serving formal written discovery requests and obtaining responses and documents thereto, in addition to taking Rule 30(b)(6) depositions of Defendants described above to confirm the factual information gleaned during discovery and further elucidate the propriety of the proposed Settlement Agreement.  The result of this process is a reasonable compromise that provides Class members valuable relief in exchange for their release of claim.  While the settlement did not secure all relief sought in the operative complaint, it comes close, and it certainly represents a reasonable compromise given the risk that the Class may have recovered much less or nothing at all had the case proceeded to trial.

### B.    Amount Offered in Settlement

As detailed more fully in the Settlement Agreement, the Settlement confers a valuable pool of benefits on the Settlement Class.  Primarily, the Settlement provides tiered refunds to Settlement Class members who complete and timely submit a claim form to the Claims Administrator, based on the extent of the streaming disruption that they experienced, as attested to under penalty of perjury.  Those who missed more than five minutes of the main bout between Mayweather and McGregor will receive *full* refunds ($99.99) of their PPV purchase price, while those who experienced less severe interruptions will recover less.  The claims process is necessary because Defendants are unsure from their records whether login activities shown on internal access logs were voluntary or involuntary due to the problem noted on NeuLion's incident report. *See, e.g.*, Santypal Tr. at 123:4-13; Nunn Tr. at 72:3-10, 89:14-90:5.

Class members, including those who have already received refunds, will also receive compensation if they incurred out-of-pocket losses beyond the purchase price of the PPV due to

their inability to live-stream the Event.  While Defendants have not conducted a survey of all PPV consumers' files, the aggregate value of these settlement benefits is significant for the Class and can be valued in the millions of dollars. Robinovitch Decl. ¶25 (Dkt. 98).

Although in the days the followed the Event Defendants made full $99.99 refunds to approximately 90,000 PPV consumers where Defendants' access records showed that those consumers did not live stream the Event at all, applying the catalyst theory to these refunds provides over $8.9 million in additional value to the Class as a result of the class action litigation.[5]  Each of these 90,000 previously-refunded consumers also are eligible to claim the Fight Pass benefit and further compensation for his or her frustrating experience.  Significantly, the Settlement is uncapped, so all Class members who validly attest that they missed all or part of the Event stand to be fully compensated pursuant to the terms of the Settlement without risk of any pro-rata reduction or ratchet-down based on the amount of other claims.  Given the circumstances and risks presented here and the expeditious resolution of claims which continued litigation would delay, the Settlement described herein is reasonable.

Accordingly, the Court should confirm its preliminary finding that the value of the Settlement weighs in favor of final approval. (*See* Dkt. 71 at 1).

C.    **The Strength of Plaintiffs' Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Risk of Maintaining Class Action Status through Trial**

Plaintiffs are confident in the strength of their claims.  Plaintiffs believe that at trial they could meet their burden, including, without limitation, demonstrating the Defendants are liable for the streaming issues Plaintiffs and the Class experienced causing them to incur damage and out-of-pocket losses.  Nevertheless, Plaintiffs recognize Defendants have factual and legal defenses that, if successful, could have substantially impaired the value of Plaintiffs' claims. Plaintiffs also recognize the risks they would have faced in obtaining class certification given

---

[5] *See generally*, *MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884, 891 (N.D. Cal. 2015) ("If plaintiff's lawsuit 'induced' defendant's response or was a 'material factor' or 'contributed in a significant way' to the result achieved then plaintiff has shown the necessary causal connection.") (citations omitted).

Defendants' contentions that individualized issues permeate the dispute.  While Plaintiffs are confident in the strength of their case, the risks and delay factors weigh in favor of final approval here.  Such risks include, among other things: (i) obtaining a jury verdict; (ii) maintaining a certified class through trial; (iii) collecting a judgment against Defendants; and (iv) prevailing on any appeal.  For example, Defendant's Terms of Use (Dkt. 56-6) attempts to limit liability in several respects.  If Defendants' arguments were to be upheld, Class members would be at risk of recovering far less than offered in this settlement.

Continuing to litigate this action would also require expenditure of extensive resources, expert testimony and analyses, and consumption of judicial resources.  Further, while Plaintiffs strongly believe that class treatment is appropriate for all reasons discussed herein, there is a risk that Plaintiffs would not be able to maintain class status through trial, as Defendants have consented to class certification for the purposes of settlement only.  Settlement Agreement ¶1.11.  "Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation." *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).  Thus, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* at 526.

For these and other reasons set forth in the Court's Preliminary Approval Order, these factors weigh in favor of final approval. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 148374, at *748 (N.D. Cal. Oct. 25, 2016) ("Plaintiffs' strong claims are balanced by the risk, expense, and complexity of their case, as well as the likely duration of further litigation.").

### D.    The Extent of Discovery Completed and the Stage of the Proceedings

As mentioned above, in addition to the investigation and informal discovery conducted prior to preliminary approval, the Parties have since conducted additional confirmatory discovery such as serving formal written discovery requests and obtaining responses and documents thereto, in addition to taking Rule 30(b)(6) depositions of Defendants to confirm the information provided in informal and formal discovery.  Through this discovery, Plaintiffs have

obtained documents and testimony that confirms important information such as (1) the size and characteristics of the class; (2) what Plaintiffs would contend to be the commonality of the streaming problems at issue; (3) the cause of the problems experienced by those Class members who were unable to stream some or all of the Event in real time; and (4) the need for a claims process. *See, e.g.*, Santypal Tr. at 37:22-38:12, 89:1-91:3, 106:13-25, 114:23-119:12, 123:4-13; Nunn Tr. at 24:7-9, 52:3-53:24, 62:10-65:11, 65:21-66:11. In short, the discovery confirmed the conclusions which formed the basis for the Settlement Agreement, demonstrating that the Settlement is fair, reasonable, and adequate.

### E.   The Experience and Views of Counsel

The judgment of experienced counsel regarding the Settlement is entitled to great weight. *Harris v. U.S. Physical Therapy, Inc.*, No. 2:10-cv-01508-JCM-VCF, 2012 WL 3277278, at *7 (D. Nev. July 18, 2012) ("Based on counsels' knowledge of the specific facts of this action, experience in settlements such as this, and opinion that the settlement should is fair, reasonable, and adequate, the court finds that this factor weighs in favor of granting preliminary approval of the settlement.") (citation omitted). Here, Class Counsel have extensive experience in prosecuting consumer class actions, and each fully support the Settlement as fair, adequate, and reasonable. *See generally*, Motion for Attorneys' Fees (Dkt. 77); Decls. of Class Counsel (Dkts. 78-84, 98). Class Counsel conducted extensive investigation in this case, retained an expert, demanded information in advance of the mediation, and completed additional formal confirmatory discovery. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate under the applicable factors weighs in favor of this Court's final approval of the Settlement. In addition, all Class Representatives independently reviewed the Settlement terms and support the Settlement as well. *See generally* Decls. of Class Representatives (Dkts. 84-97).

### V.   THE SETTLEMENT PROVIDED THE BEST CLASS NOTICE PRACTICABLE

Rule 23 requires that a class action settlement notice to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S.

306, 314 (1950).  Perfect notice is not required.  Instead, the notice should be the best class notice practicable under the circumstances.  "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Capps v. Singer*, No. 15-cv-02410-BAS, 2016 U.S. Dist. LEXIS 161137, at *26 (S.D. Cal. Nov. 21, 2016) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975)).

At the Preliminary Approval stage, the Court "considered the Class Notice plan set forth in the Agreement and [found] that the Class Notice and methodology as described in the Settlement Agreement and in the Declaration of the Claims Administrator: (a) meets the requirements of due process and Fed. R. Civ. P. 23(c) and (e); (b) constitutes the best practicable under the circumstances to all persons entitled to notice; and (c) satisfies the Constitutional requirements regarding notice." (Dkt. 71, at p. 4, ¶9).  In addition, this Court found that "the forms of notice (a) apprise the Class members of the pendency of the Action, the terms of the proposed settlement, their rights and deadlines under the Settlement; (b) are written in simple terminology; (c) are readily understandable by Class Members; and, (d) comply with the Federal Judicial Center's illustrative class action notices" approving the Class Notice and methodology as described in the Settlement Agreement "in all respects." *Id.*

Since then, the Notice Plan approved by this Court has been fully executed by Class Counsel and the Settlement Administrator, Angeion Group. *See* Preliminary Approval Order, (Dkt. 71); subsequent Stipulation Approved by the Court (Dkt. 75); Walitsky Decl.  On or before April 9, 2018, the Settlement Administrator sent the approved E-Mail Notice to 154,446 potential Class members in the United States at the email addresses each used to purchase the PPV.  Walitsky Decl. at ¶¶8-11.  That same day Amazon caused an additional 54,337 notices to be sent to the group of Class members who purchased streaming access to the Event via Amazon. Buckely Decl. at ¶¶3, 5 (filed concurrently herewith).[6]  Using email to notify the Class

---

[6]  By order dated April 4, 2018, the Court approved the Parties' stipulation to allow Zuffa's partner Amazon to send the Amazon Direct Email Notice to those Settlement Class members who purchased streaming access to the Event from Amazon (Dkt. 76).

of the Settlement was a reasonable methodology given that all sales of the PPV were conducted electronically with confirmations of each sale sent to those same email addresses at the time of purchase.

While a small number of emails (3,822) sent by the Settlement Administrator were returned as undeliverable, after inspecting for resolvable errors, the Settlement Administrator made a second attempt to send the Direct Email Notice to Class members. *See* Walitsky Decl. at ¶¶9-11.  The Settlement Administrator then sent the Short Form Notice, with proper postage prepaid, to the mailing addresses of the Class members whose emails were returned as undeliverable in accordance with §8.3 of the Settlement Agreement. *Id.* at ¶¶12-17.  Reasonable efforts to skip trace and update undeliverable addresses were undertaken by the Settlement Administrator. *Id.* at ¶17.  Further, on April 6, 2018 the Settlement Website was established containing the Consolidated Amended Complaint, the Motion for Preliminary Approval, the Preliminary Approval Order, the Settlement Agreement, Settlement Notice, and Claim Forms; and identifying key deadlines including the Claims Deadline, the Opt-Out Deadline, Objection Deadline, the date of Final Approval Hearing, a "Frequently Asked Questions" section, and the ability for Class members to complete and submit the Claim Form electronically.  Like the notice, the website also provided information for Class members to ask questions about the Settlement and contact Class Counsel. Walitsky Decl. at ¶18.  In addition, on April 6, 2018 a toll-free telephone support line was established providing Class members with general information about the Action, responses to frequently asked questions about the Action and claims procedure, as described in §8.5 of the Settlement Agreement, and permitting Class members to request and obtain copies of the Settlement Notice and Claim Forms from the Settlement Administrator. *Id.* at ¶19.  Finally, the requisite CAFA notices have been sent to state Attorneys General allowing them an opportunity to respond and voice any concerns that they may have with the Settlement. Walitsky Decl. at ¶6.  None of them have indicated that they have any issues with the Settlement.

By way of the foregoing, the Class Notices have provided the best notice practicable to the Class under the circumstances, and Plaintiffs respectfully request that the Court finally

1    approve the Notice Plan and find that the Class Notices satisfy Rule 23(c)(2) and due process.

2    **VI.    THE COURT SHOULD AFFIRM CERTIFICATION OF THE CLASS**

3            As a final matter, the Court should confirm that the Settlement Class is properly certified

4    under Fed. R. Civ. P. 23.  A proposed class may be certified for settlement purposes if it

5    satisfies Federal Rule of Civil Procedure 23(a), "namely: (1) numerosity, (2) commonality, (3)

6    typicality, and (4) adequacy of representation." *Hanlon*, 150 F.3d at 1019 (citing *Amchem*

7    *Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997)).

8            The courts have long regarded "consumer claims" as "particularly appropriate for class

9    resolution." *White v. Imperial Adjustment Corp.*, No. Civ.A. 99-3804, 2002 WL 1809084, at

10   *15 (E.D. La. Aug. 6, 2002); *see also Amchem*, 521 U.S. at 625; *Cavin v. Home Loan Ctr., Inc.*,

11   236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly

12   certified for class treatment").  As set forth below, there is no basis for regarding these

13   consumer claims any differently.  In fact, the Ninth Circuit in *Hanlon*, 150 F.3d at 1026

14   specifically approved the class certification of a similar nationwide class for settlement

15   purposes. *See also, In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods.*

16   *Liab. Litig.*, No. 8:10ML02151, 2012 WL 7802852 at *5 (C.D. Cal. Dec. 28, 2012); *In re*

17   *Toyota*, 2013WL 3224585, at *5 (C.D. Cal. June 17, 2013) (same).

18           This Court previously determined that the Class met the factors set forth in Rules 23(a)

19   and (b)(3) of the Federal Rules of Civil Procedure. (Dkt. 71, at p. 2, ¶4).  No additional facts

20   have come to light to disturb the logic of that Order.  Therefore, the Court should confirm its

21   decision to certify the Class. *See id.*

22       **A.  Plaintiffs' Claims Satisfy the Requirements for Class Certification**

23               **1.    Ascertainability**

24           To be considered sufficiently ascertainable, "[t]he [class] definition must be precise,

25   objective, and presently ascertainable." *In re Wal-Mart Wage & Hour Emp't Practices Litig.*,

26   No. 2:06-cv-00225-PMP-PAL, 2008 WL 3179315, at *20 (D. Nev. June 20, 2008) (citation

27   omitted).  If it is "administratively feasible" for the court to determine whether a particular

28   individual is a member, a Class is ascertainable. *Briseno v. ConAgra Foods, Inc.*, 944 F.3d 1121

(9th Cir. 2017).  Here, the proposed Class is ascertainable.  Contact information for each individual Class member, including their electronic and/or physical mailing address, exists. Access logs and "watch histories" maintained by Defendants show when each consumer logs into their account and starts to download the permitted content. *See generally*, Santypal Tr. at 119:13-121:22, 135:3-140:7.  Though it is impossible to tell whether streaming interruptions were voluntary or involuntary due to the common download problem, the claims process adopted here cures any question of the same.  Therefore the Class is sufficiently ascertainable, as the Class definition preliminarily certified by this Court is defined by objective criteria and is definite enough so that it is administratively feasible for the Court to ascertain whether an individual is a member.

### 2.    Numerosity

Although Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable, "there is no exact numerical formula which is used to determine whether a group of plaintiffs is sufficiently numerous to be certified as a class and that this determination must be made on a case by case basis." *Hernandez v. Alexander*, 152 F.R.D. 192, 194 (D. Nev. 1993).  There are over 208,000 people who meet the Settlement Class definition. *See* Walitsky Decl. at ¶7; Buckley Decl. ¶¶3, 5.  As this Court found in its Preliminary Approval Order it is impracticable to join all those individuals in a single action, "the numerosity requirement is certainly met in this case." *Acosta v. Trans Union, LLC*, 240 F.R.D. 564, 571 (C.D. Cal. 2007).

### 3.    Commonality

A party seeking certification must show that there are questions of law or fact common to the class, though commonality is a permissive requirement and "not all questions of fact and law need be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019.  "[A] common question must be of such a nature that it is capable of classwide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (quotation omitted).  The "existence of shared legal issues with divergent factual predicates is

sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, at 1019-20.

At least for settlement purposes, the commonality bar has been satisfied here. Plaintiffs assert central dispute in this case to be Defendants' collective conduct in marketing, promoting, and streaming the Event, and failing to provide a product consistent with representations made to Class members prior to their purchase. Plaintiffs believe that the common questions of law and fact include whether Defendants breached Class members' contracts for streaming the Event, whether Defendants' conduct violates consumer protection laws, and what caused the Defendants' streaming issues leading to the streaming interruptions. Other common issues involve interpretation of Defendants' common Terms of Use and whether the requested relief can be recovered under those terms (Dkt. 56-6). Common law applies to all Class members' claims, as Zuffa's Terms of Use contain a common forum selection clause calling for all claims to be filed in Nevada courts, and a common choice of law clause calling for uniform application of Nevada law.[7] *See* CAC ¶97; Doc 56-6. Thus, even though many Class members reside outside of Nevada, Nevada law applies equally to all. Moreover, the online streaming interruptions that occurred were caused by a common technical failure at NeuLion which caused a capacity shortage and the service interruptions. Santypal Tr. at 98:4-108:5; Nunn Tr. at 53:3-65:11. For settlement purposes, Defendants have agreed not to contest Class members' contentions that they experienced difficulties in connecting, other than by comparing a Class member's assertions to its server logs. While Class members may have experienced variations in the length of the disruption suffered (if any), for purposes of this Settlement such issues are addressed in a manageable way through the sworn Claim Forms and verification process. Santypal Tr. at 138:4-140:7. In order to best tailor the relief to the degree of damage each Class member suffered, a tiered recovery system is adopted on the Claim Form, as is appropriate in

---

[7] As the forum selection clause in Zuffa's standard Terms of Use is applicable to all Class members' claims, and calls for uniform application of Nevada law, there are no concerns regarding choice of law or state-law variations under *In re Hyundai and Kia Fuel Economy Litig.*, No. 15-56014, 2018 WL 505343 (9th Cir. Jan. 23, 2018).

class actions.

Accordingly, this Court should confirm that "there are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members." (Dkt. 71, at p. 2, ¶5).

### 4.    Typicality

The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* "Under the 'permissive standards' of this Rule, 'representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Hanlon*, 150 F.3d at 1020. The focus is "on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009).

In this case, the Class Representatives' claims arise from the same legal theories as the absent class. Plaintiffs have alleged that Defendants engaged in a nationwide marketing scheme to induce Class members' purchase of the Event stream, and that due to a technical difficulty at NeuLion, many Class members were unable to view the complete, uninterrupted Event as purchased. Nunn Tr. at 53:3-65:11. Defendants were in control of the live-stream of the Event, and as such, the cause of the streaming interruptions resulted from the same conduct emanating to each Class member attempting to view the Event. As discussed above, because Nevada law applies uniformly to each Class member pursuant to the common Terms of Use, all Class members pursue common legal theories without distinction. Accordingly, this Court should confirm that "Plaintiffs' claims are typical of the Class's claims." (Dkt. 71, at p. 2, ¶5).

### 5.    Adequacy of Representation

The final prerequisite for class certification is that the named plaintiffs be able to fairly and adequately protect the interests of the class. This determination turns on just two questions:

"(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 682 (D. Nev. 2008).   Both components of the "adequacy" test are met here. Class Representatives have actively pursued this litigation on behalf of the Class members, and share an identical interest in establishing Defendants' liability and obtaining a suitable remedy for the interruption of the Event and related viewing activities. The Class Representatives have suffered economic loss from the same conduct of Defendants. Similarly the proposed Class Representatives have actively participated in and kept abreast of the litigation as it developed. *See* Decls. of Class Representatives (Dkts. 85-97).  There can be no argument that the Class Representatives adequately represent the Class and have no conflicts or positions antagonistic to the Class.

The undersigned counsel similarly satisfy the adequacy requirement and should be affirmed as Class Counsel who are "qualified, experienced and able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc.*, No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009) (internal quotation omitted).  With the litany of experience in class action and other complex litigation that proposed Class Counsel bring, there can be no doubt that they are adequate to represent the Settlement Class here. *See generally*, Decls. of Class Counsel (Dkts. 77-84, 98).  Thus, this Court should confirm the appointment of Hart Robinovitch and Caleb Marker of Zimmerman Reed LLP; Bonner Walsh of Walsh PLLC; Timothy J. Peter of Faruqi & Faruqi, LLP; Aaron M. Olsen of Haeggquist & Eck, LLP; Eric A. LaGuardia of LaGuardia Law; and Drew Ferrandini of Seven Hill Law, APC, as Class Counsel.

### B.    The Proposed Class Meets the Requirements of Rule 23(b)(3)

Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A C.A. Wright, A.R. Miller & M. Kane, Federal Practice & Procedure §1777 (2d ed. 1986)).  Certification under Rule 23(b)(3) requires that: (1) questions of law or fact common to the class predominate over questions affecting only individual members; and (2) a

class action is superior to resolution by other available means. Fed. R. Civ. P. 23(b)(3); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010).  Predominance is satisfied when common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022.   The predominance requirement "does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions." *Dura-bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981). For settlement purposes only, Defendant does not object to a finding that the Class should be certified under Rule 23(b)(3). Settlement Agreement ¶1.11.

### 1.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 117 S.Ct. at 2249).  If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Id.* at 1022.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). While there is no definitive test for determining whether common issues predominate, in general, predominance is met when there exists generalized evidence which proves or disproves an issue or element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position.  The main concern is "the balance between individual and common issues." *In re Wells Fargo Home Mortg.*, 571 F.3d 953, 959 (9th Cir. 2009).

As the Settlement is structured here, common questions of law and fact predominate over individual issues.  Certain manageability concerns are eliminated, as there will be no longer be a trial and certain objections are waived.  Due to a common choice of law clause in

1    Defendant's Terms of Use common law (Nevada's) applies to all Class members' claims.  The

2    pertinent evidence necessary to establish Plaintiffs' claims is common to both the Class

3    Representatives and Class members – they would all seek to prove that Defendants' marketing

4    and promotion of the Event violated the Nevada consumer protection law, that Defendants' had

5    knowledge of the risks attendant to selling large volumes of live-streams of the Event without

6    adequate testing, and that Defendants' conduct caused the interruptions of the live-streams of

7    the Event depriving them of the item purchased.  Further, any defenses that Defendants may

8    raise based on arguable limitations on claims set forth in their standard Terms of Use are also

9    entirely common to the Class.  As such, the predominance element of Rule 23(b)(3) is met.

10                    **2.    Superiority**

11            Under the circumstances, a class action is the "most efficient and effective means of

12    resolving [a] controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th

13    Cir. 2010).  In determining whether a class action is the superior method, Rule 23(b)(3)'s non-

14    exclusive factors are: "(A) the interest of members of the class in individually controlling the

15    prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning

16    the controversy already commenced by or against members of the class; (C) the desirability or

17    undesirability of concentrating the litigation of the claims in the particular forum; and (D) the

18    likely difficulties to be encountered in the management of a class action." Fed. R. Civ. P. Rule

19    23(b)(3).

20            All of these factors are present here. The value of each individual dispute, particularly in

21    cases where individuals had already obtained a refund and were seeking only to recover some

22    amount of out-of-pocket expenditure related to viewing the Event, would be dwarfed by the cost

23    to litigate the same.  Additionally, merging these disputes in a single class action before a single

24    judge is preferable and more manageable than requiring thousands of consumers to bring

25    individual actions.  The likely outcome of failing to proceed as a class action would have been

26    no litigation at all, and no remedy to any Class member.   Accordingly, this Court should

27    confirm that "a class action is superior to the other available methods for the fair and efficient

28    adjudication of the controversy through settlement." (Dkt. 71 at p. 2, ¶5).

## VII.    CONCLUSION

Based on the foregoing, the Settlement in this case represents an excellent result for the Class.  Any Class member who properly submits a Claim Form and attests that he or she was unable to view more than five minutes of the main bout receives a full refund, while those who missed less get smaller but still significant refunds.  In turn, Plaintiffs respectfully request that the Court grant their motion for final approval and enter a Final Approval Order and a Final Judgment, substantially in the form the Proposed Order and Judgment filed concurrently herewith and consistent with the terms of the Settlement.

Respectfully submitted,

Dated: July 5, 2018                         **ZIMMERMAN REED LLP**

/s/ Hart L. Robinovitch
Hart L. Robinovitch (Admitted Pro Hac Vice)
E-mail: hart.robinovitch@zimmreed.com
14646 N. Kierland Blvd., Suite 145
Scottsdale, Arizona 85254
(480) 348-6400 Telephone
(480) 348-6415 Facsimile

Caleb Marker (Pro Hac Vice)
**ZIMMERMAN REED LLP**
E-mail: caleb.marker@zimmreed.com
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, California 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

Aaron M. Olsen (Pro Hac Vice)
**HAEGGQUIST & ECK, LLP**
E-mail: aarono@haelaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
(619) 342-8000 Telephone
(619) 342-7878 Facsimile

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Eric A. LaGuardia (Pro Hac Vice)
**LAGUARDIA LAW**
E-mail: eal@laguardialaw.com
402 West Broadway, Suite 800
San Diego, CA  92101
(619) 655-4322 Telephone
(619) 655-4344 Facsimile

Timothy J. Peter (Pro Hac Vice)
**FARUQI & FARUQI, LLP**
E-mail: tpeter@faruqilaw.com
685 Third Avenue, 26th Floor
New York, NY  10017
(212) 983-9330 Telephone
(215) 277-5771 Facsimile

Bonner Walsh (Pro Hac Vice)
**WALSH PLLC**
E-mail: bonner@walshpllc.com
P.O. Box 7
Bly, Oregon  97622
(541) 359-2827 Telephone
(866) 503-8206 Facsimile

Drew Farrandini (Pro Hac Vice)
**SEVEN HILL LAW, APC**
E-mail: drewf@sevenhilllaw.com
411 West 7th Street, Suite 310
Los Angeles, CA  90014
(213) 235-3532 Telephone
(213) 488-1588 Facsimile

David Markman
Las Vegas, NV
(209) 541-7905 Telephone

*Attorneys for Plaintiffs*